UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 2494 |
| v. | ) | |
| | ) | Judge Lee |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF**
**THE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Plaintiff Jacqueline Stevens has sued for the release of State Department records under the Freedom of Information Act, 5 U.S.C. § 552. She says that the Department has improperly withheld records in response to three of her FOIA requests. But the Department has conducted reasonable searches in response to Stevens's FOIA requests in numerous locations and has not improperly withheld any records. As a result, the Department is entitled to summary judgment.

**Background**

Stevens filed three FOIA requests with the Department in 2015. Department's Statement of Facts (DSOF) ¶¶ 5-6, 20, 37. The requests were assigned three corresponding tracking numbers: F-2015-003180, F-2015-003181, and F-2015-03575. *Id*. For simplicity the Department will refer to the requests as Request 3180, Request 3181, and Request 3575.

The Department produced several documents in response to Request 3180 in 2016. *Id*. ¶ 17. Shortly after the lawsuit's filing in 2017, Stevens agreed to modify the language in Requests 3181 and 3575. *Id*. ¶¶ 21, 38. The three requests were as follows:

1

- Request 3180 asked for "[a]ll State HQ and consular Qatar materials in all system records and elsewhere referencing Northwestern University's Qatar campus" from 2005 to present, including "memorandums, cables or email, notes, reports, correspondence with other agencies, members of Congress (or staff) and private firms or individuals." *Id.* ¶ 5.

- Request 3181 as modified asked for "policy and planning materials" relating to "establishing U.S. university campuses in Qatar, Abu Dhabi, South Korea, China, and Singapore" from 2003 to present. *Id.* ¶ 21.

- Request 3575 as modified asked for documents "sent to and from USAID" and documents "produced, received or maintained by the Middle East Partnership Initiative and its components," from 2004 to present, relating to: (1) "U.S. Government funds transferred to the Independent Center of Journalists"; (2) Northwestern University and its components, including the Medill School of Journalism; or (3) the Center of Journalism Excellence. *Id.* ¶¶ 37-38.

The Department determined that several record systems and offices were reasonably likely to have documents responsive to Stevens's requests: the State Archiving System, the Retired Records Inventory Management System, the U.S. Embassy in Doha, the U.S. Embassy in Abu Dhabi, the U.S. Embassy in Beijing, the U.S. Consulate in Shanghai, the U.S. Embassy in Seoul, the U.S. Embassy in Singapore, the Bureau of Diplomatic Security, the Bureau of Near Eastern Affairs (in which the Middle East Partnership Initiative is located), the Bureau of East Asian and Pacific Affairs, the Bureau of International Information Programs, the Office of Policy and Planning Staff, and the Office of the Undersecretary for Management. *Id.* ¶¶ 7, 22, 39. The Department searched these record systems and offices using a wide range of search terms. *Id.* ¶¶ 8-15, 23-34, 40-41. Where responsive documents contained information exempt from disclosure under FOIA, the Department carefully reviewed the documents and segregated non-exempt information where possible. *Id.* ¶ 52. The Department also determined that several offices and bureaus were not reasonably likely to maintain responsive records. *Id.* ¶¶ 16, 35.

From June 2017 to May 2018, the Department produced several hundred documents in response to Stevens's FOIA requests. *Id.* ¶¶ 19, 42, 49, 51. All told, in response to Request 3180, the Department produced 101 documents in full and 299 documents in part and withheld 20

documents in full. *Id*. ¶ 49. The Department also referred one document to the Defense Intelligence Agency (DIA), which denied the document in full in 2017. *Id*. ¶ 17. In response to Request 3575 the Department produced 29 documents in full and 2 documents in part and withheld 2 documents in full. *Id*. ¶ 51. The Department did not locate any records responsive to Request 3181. *Id*. ¶ 50.

The Department's production is now complete, though Stevens challenges the withholding-in-part and withholding-in-full of some documents. Stevens sent the Department a list of the withholdings she is challenging, and the Department has prepared a *Vaughn* index describing each of the challenged withholdings and the basis for each withholding. *Id*. ¶¶ 43-47; *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973) (agency must provide court with "relatively detailed analysis" of records withheld under FOIA). The Department cannot further segregate meaningful information from the documents. DSOF ¶ 52.

## Legal Standard

Summary judgment is proper when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Stevens v. DHS*, 2014 WL 5796429, *4 (N.D. Ill. Nov. 4, 2014) (citing Fed. R. Civ. P. 56(a)). The moving party must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue exists, the court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001).

FOIA cases typically are resolved on summary judgment because they often hinge on whether an agency's undisputed actions violated FOIA. *E.g.*, *Bassiouni v. C.I.A.*, 2004 WL 1125919, *2 (N.D. Ill. Mar. 31, 2004). The court's review is limited to whether the agency (1)

3

improperly (2) withheld (3) agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (judicial remedial authority dependent on agency violation of all three components).

A FOIA defendant's motion should be granted if it provides the court with declarations or other evidence showing that it conducted an adequate search for records and that any responsive documents were produced or are exempt from disclosure. *E.g., Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (declarations "indicating the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden"); *Stevens*, 2014 WL 5796429, at *4 (summary judgment for agency appropriate in FOIA case "if the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed") (quoting *Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995)). Agency submissions in support of a summary judgment motion should be "accorded a presumption of good faith." *Demma v. DOJ*, 1996 WL 11932, *3 (N.D. Ill. Jan. 10, 1996) (citing *Carney*, 19 F.3d at 812).

## Argument

The State Department is entitled to summary judgment. As shown in the accompanying declarations and *Vaughn* index, the Department conducted an *adequate search* for documents responsive to Stevens's requests; the Department and DIA *properly withheld* certain information under FOIA exemptions 1, 3, 4, 5, and 6; and the Department and DIA have released all reasonably segregable information from the responsive records.

### I. Adequate Search for Responsive Records.

The Department has satisfied its burden on summary judgment on the first requirement for summary judgment—conducting an adequate search for responsive records—because it has shown

4

that it made a good faith effort to conduct a search "reasonably calculated to uncover all relevant documents." *Hart v. FBI*, 1996 WL 403016, *2 (7th Cir. July 16, 1996); *see also DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (agency must make good faith effort to conduct search using methods that "can be reasonably expected to produce the information requested"). The issue "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The search is thus gauged "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quotation omitted).

An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). Here, the Declaration of Eric Stein, Director of the Department's Office of Information Programs and Services, explains that, in response to Stevens's FOIA requests, the Department conducted searches of numerous record systems and offices that were reasonably likely to have records responsive to Plaintiff's request. DSOF ¶¶ 5-42. For example, in response to Requests 3180 and 3181, the Department searched, among other locations, records at the embassies corresponding to the locations that Stevens identified in her requests, as well as the bureaus that would cover the relationships with those countries. *Id.* ¶¶ 7-15, 22-34. The Department also searched its State Archiving System, which provides the ability to query through a single interface over 40 million records, including cables, diplomatic notes, and official correspondence. *Id.* ¶ 7-8, 22. In response to Request 3575, the Department searched the records maintained by the Middle East Partnership Initiative (the entity identified in the request as maintaining potentially responsive documents). *Id.* ¶ 39-41.

5

The Department determined that no other components were reasonably likely to contain responsive documents. *Id*. ¶¶ 16, 35. The Department processed the responsive documents and released all non-exempt documents to Stevens. *Id*. ¶¶ 17, 19, 36, 42 52. These efforts were more than reasonable. The Department has fully complied with its FOIA obligation to search for responsive records.

## II. No Information Improperly Withheld

The Department (and DIA) satisfies the second requirement for summary judgment as well: it did not improperly withhold documents. FOIA requires an agency to release responsive information unless it is protected from disclosure by one or more of nine exemptions. 5 U.S.C. § 522(b); *DOJ v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions. 5 U.S.C. § 552(a)(4)(B); *NRDC v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). Here, the Department and DIA properly withheld certain information in full or in part under FOIA exemptions 1, 3, 4, 5, and 6.

### A. Exemption 1 (classified information)

The Department and DIA correctly asserted Exemption 1 to withhold classified information. DSOF ¶ 43. Exemption 1 protects from disclosure information that is specifically authorized under criteria established by executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified under that executive order. 5 U.S.C. § 552(b)(1). The Department and DIA withheld information that is classified under Executive Order 13526 as "Secret" and "Confidential." E.O. 13526 § 1.2; DSOF ¶ 43. The "Secret" designation applies to information regarding foreign relations or foreign activities of the U.S. government, the release of which reasonably could be expected to cause serious damage to national security. E.O. 13526 § 1.2(a)(2). The "Confidential" designation applies to information that, if

disclosed, reasonably could be expected to cause damage to national security. *Id*. § 1.2(a)(3). Damage to national security is defined as "harm to the national defense or foreign relations" from the unauthorized disclosure of information when considering the information's "sensitivity, value, utility, and provenance." *Id*. § 6.1(l). Consistent with Executive Order 13526 § 1.1(a), the Department and DIA determined that the withheld information is under the control of the United States government, falls within Sections 1.4(b), (c) or (d) of Executive Order 13526, and, if disclosed, could reasonably be expected to result in damage to national security. DSOF ¶ 43.

Withholding information that implicates national security is "a uniquely executive purview." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926-27 (D.C. Cir. 2003) (listing Supreme Court cases recognizing "the propriety of deference to the executive in the context of FOIA claims which implicate national security"). Courts have "consistently" deferred to executive-branch affidavits predicting harm to national security, finding it "unwise" to engage in "searching judicial review" of executive decisions of this type. *Id*. at 927; *see also Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (reaffirming "deferential posture in FOIA cases regarding the uniquely executive purview of national security) (quotation omitted); *ACLU v. DOJ*, 265 F.Supp.2d 20, 27 (D.D.C. 2003) (court must give "substantial weight" to agency declarations) (quoting *King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987)). Domestic courts have "little expertise" in international diplomacy and "are in no position to dismiss" facially reasonable concerns about harm to national security. *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999). A district court will err if it performs "its own calculus" regarding whether harm to national security will result from disclosure. *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990). Deference is owed to an agency's claimed exemptions "so long as the government's declarations raise legitimate concerns that disclosure would impair national security." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 928.

Here, the national-security withholdings should be given deference because, as explained below, they are facially reasonable. *Frugone*, 169 F.3d at 775.

### 1. Section 1.4(b)

Section 1.4(b) of Executive Order 13526 applies to "foreign government information," meaning: (1) information provided by a foreign government with the expectation that the information and/or its source will be held in confidence; (2) information produced by the United States as a result of a joint arrangement with a foreign government requiring that the information and/or the arrangement itself will be held in confidence; or (3) information received and treated as "foreign government information" under the terms of a predecessor order. E.O. 13526 § 6.1(s). The unauthorized disclosure of foreign government information is presumed to cause damage to national security. *Id*. § 1.1(d).

Here, the Department properly withheld information that is classified as foreign government information under E.O. 13526 § 1.4(b) and that is consequently exempt from disclosure under Exemption 1. DSOF ¶ 43. For example, the Department withheld a cable reporting on discussions between the U.S. Ambassador to Qatar and a Qatari government official. *Vaughn* index entry 27. The Department also withheld foreign government information in cables providing information to U.S. Government officials in advance of their visits to Qatar. *Vaughn* index entries 28, 31-32, 34-35, 37. These withholdings are proper because the Department's ability to obtain information from foreign governments is essential to the formulation and successful implementation of American foreign policy. *Id*. Releasing foreign government information that was provided in confidence—whether the release is voluntarily or in response to a court order—would cause foreign officials to believe that the Department is either unwilling or unable to observe the confidentiality expected in such exchanges. *Id*. Foreign governments will be less willing to provide important information in the future, and they will be less disposed to

8

cooperate with the United States in pursuing common foreign policy objectives. *Id*. Protecting foreign government information—and in some cases even the fact that the information has been provided—is critical to the Department's diplomatic relationships and its conduct of foreign relations. DSOF ¶ 43 (Stein Dec. ¶ 69).

### 2. Section 1.4(c)

Section 1.4(c) of Executive Order 13526 applies to "intelligence sources or methods." E.O. 13526 § 1.4(c). Here, DIA properly withheld information in one document that is classified under E.O. 13526 § 1.4(c) and that is consequently exempt from disclosure under Exemption 1 because the information concerns intelligence sources and methods. DSOF ¶ 43. Disclosure of this type of information could cause damage to national security, because intelligence sources can be expected to furnish information only if they are confident that they will be protected from retribution by absolute secrecy surrounding their relationship with the United States. *Id*. (Williams Dec. ¶ 8).

### 3. Section 1.4(d)

Section 1.4(d) of Executive Order 13526 applies to "foreign relations or foreign activities of the United States, including confidential sources." E.O. 13526 § 1.4(d). Here, the Department and DIA properly withheld information that is classified under E.O. 13526 § 1.4(d) and that is consequently exempt from disclosure under Exemption 1. DSOF ¶ 43. For example, the Department withheld cables providing information to American policymakers in advance of visits to Qatar. *Vaughn* index entries 28, 29, 31-32, 34-35, 37 It also withheld cables regarding other sensitive issues pertaining to U.S. engagement in Qatar (*e.g.*, entries 33-34, 36), and sensitive discussions regarding the political climate in that country (entry 29). The Department also withheld information involving sensitive discussions of U.S. national security interests in the Middle East. *E.g.*, entries 28, 31-32, 37. The information concerns confidential sources and/or

sensitive aspects of U.S. foreign relations, including issues relating to identifying potential threats to national security. *E.g.*, entries 26-27, 30-33. The Department must be able to provide policymakers with candid assessments of foreign nations and leaders without fear that the internal assessments will be made public. *Id.* Releasing this information has the potential to damage or at least inject friction into the United States' bilateral relationships with Middle Eastern countries whose cooperation is important to national security, including some countries in which public opinion might not currently favor cooperation with the United States. *Id.* Further, the Middle East's political and security instability exacerbates the risk that releasing the information could pose a direct threat to national security. *Id.* Finally, the information DIA withheld under section 1.4(c), above, also relates to foreign relations or foreign activities of the United States, the disclosure of which would reasonably be expected to damage our foreign relations. DSOF ¶ 43 (Williams Dec. ¶ 13).

### B. Exemption 3 (information protected by statute)

DIA correctly asserted Exemption 3 to withhold information in the referred record. DSOF ¶ 44. Exemption 3 permits the withholding of information that is "specifically exempted" by statute. 5 U.S.C. § 552(b)(3). Here, 10 U.S.C. § 424 protects the disclosure of information that would reveal DIA's functions. DIA accordingly withheld information about the agencies, countries, and organizations with which DIA shares intelligence information. DSOF ¶ 44. Revealing that information would give insight into how DIA fulfills its intelligence-collection function, and 10 U.S.C. § 424 protects that information from disclosure. *Id.* DIA also withheld phone numbers, email addresses, and office symbols, which individually and combined would shed light on its organizational structure and function—information also protected by 10 U.S.C. § 424. *Id.* DIA also operates under guidance from the Director of National Intelligence (*id.* ¶ 17), who is required by 50 U.S.C. § 3024(i)(1) to protect intelligence sources and methods from

10

disclosure. DIA's Exemption 3 withholdings are proper under this statute as well, because releasing the information would reveal intelligence sources and methods. *Id.* ¶ 44.

### C. Exemption 4 (business information)

The Department correctly asserted Exemption 4 to withhold 3 documents. DSOF ¶ 45; *Vaughn* index entries 11-13. Exemption 4 covers two broad categories: (1) trade secrets; and (2) information that is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential. 5 U.S.C. § 552(b)(4). It protects the interests of both the government and the people submitting the information. *Critical Mass Energy Project v. N.R.C.*, 975 F.2d 871, 873 (D.C. Cir. 1992). It protects the government by encouraging submitters to voluntarily furnish useful commercial or financial information and by helping to assure the government that the information will be reliable. *Id.* And it protects submitters from the competitive disadvantage that could result from disclosure. *Id.*

Here, the Department withheld commercial information that a film producer, Alix Madigan, voluntarily submitted to demonstrate the types of courses she could teach for an event held by the U.S. Embassy in Doha. *Vaughn* index entries 11-13. The documents are syllabi and handouts for a film class that Madigan teaches; Madigan teaches the class for a fee and does not share the documents beyond her students. *Id.* The information is commercial because it is part of the service Madigan provides in her profession. And the information is confidential under Exemption 4 because it would not customarily be disclosed to the public. *Critical Mass Energy Project*, 975 F.2d 871 (concluding that commercial information is confidential under Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained).

### D. Exemption 5 (litigation privileges)

The Department correctly asserted Exemption 5 to withhold privileged information. DSOF ¶ 46. Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with an agency." 5 U.S.C. § 552(b)(5). To qualify for this exemption, a document must fall within the ambit of the traditional privileges that the government could assert in civil litigation against a private litigant. *Enviro Tech Int'l, Inc. v. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004). Those privileges are the attorney-client, attorney work-product, and deliberative-process privileges. *Barmes v. I.R.S.*, 60 F.Supp.2d 896, 901 (S.D. Ind. 1998) (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). The Department has withheld information under the deliberative-process privilege.

The deliberative-process privilege protects records "reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008). To qualify for the deliberative-process privilege, the information must be: (1) "predecisional," meaning it must be antecedent to the adoption of an agency policy; and (2) "deliberative," meaning it reflects the give-and-take of the consultative process. *Reilly v. Dep't of Energy*, 2007 WL 4548300, *4 (N.D. Ill. Dec. 18, 2017). The privilege reflects "the legislative judgment that the quality of administrative decision-making would be seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal or policy matters would be impossible." *Tax Analysts v. I.R.S.*, 117 F.3d 607, 617 (D.C. Cir. 1997); *see also United States v. Nixon*, 418 U.S. 683, 705 (1974) ("Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process.").

Here, the Department withheld drafts of cables and presentations containing the author's recommendations regarding what information to include; internal discussions and opinions regarding potential agendas for people visiting Qatar, including opinions on who to include on the agendas; and a briefing paper for a senior agency official that was drafted to advise him on his approach to meeting with a foreign counterpart. DSOF ¶ 46. These are classic examples of the deliberative process. *ICM Registry, LLC v. DOC,* 538 F.Supp.2d 130, 135 (D.C. Cir. 2008) (deliberative-process privilege protected documents such as a draft memo reflecting author's impressions of meeting between Department officials and Japanese delegation); *Russell v. Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (deliberative-process privilege applies to documents that "would expose to public view the deliberative process of an agency"); *Jordan v. DOJ*, 591 F.2d 753, 773 (D.C. Cir. 1978) ("officials should be judged by what they decided[,] not for matters they considered before making up their minds") (quotation omitted)*; In re Apollo Grp., Inc. Sec. Litig.*, 251 F.R.D. 12, 31 (D.D.C. 2008) (drafts "by their very nature" are "typically predecisional and deliberative" because they reflect "tentative" views "that might be altered or rejected upon further deliberation"); *People for the Am. Way. Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007) ("drafts are commonly found exempt under the deliberative process exemption"). Considerable deference should be given to the Department's judgment about what constitutes the give-and-take of deliberative process, because an agency is best situated "to know what confidentiality is needed 'to prevent the injury to the quality of agency decisions.'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F.Supp. 114, 118 (D.D.C. 1984) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151). The Department properly withheld this information.

### E. Exemption 6 (personal privacy)

The Department properly redacted names and other personally identifying information under Exemption 6, which protects information when its release would be a "clearly unwarranted

13

invasion of personal privacy." 5 U.S.C. § 552(b)(6); *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 46 (D.C. Cir. 1999) (courts broadly interpret Exemption 6 to encompass all information applying to a particular individual). To determine whether releasing information would constitute a "clearly unwarranted invasion of personal privacy," the court balances the interest of protecting a person's private affairs from unnecessary public scrutiny against the public's right to governmental information. *Lepelletier*, 164 F.3d at 46. The *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure would shed light "on the agency's performance of its statutory duties" or otherwise let citizens know what their government is up to. *Id*.

Here, the Department withheld private persons' names, résumés, job applications, citizenship status, educational and work history, and email addresses and a Department employee's personal family information. DSOF ¶ 47. No public interest in the disclosure of this type of information exists, because its release would not shed light on the Department's operations and activities or add to the public's knowledge of the Department's fulfillment of its statutory duties. The privacy interests in the information outweigh the (non-existent) public interest, so the information is exempt from release under Exemption 6. 5 U.S.C. § 552(b)(6); *see also Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (burden is on requester to demonstrate sufficient public interest for disclosure); *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494-99 (1994) (releasing personal information of third parties and agency employees does not contribute significantly to public understanding of government's operations or activities). The Department properly withheld this information under Exemption 6.

    **F.**    **Exempted Information Reasonably Segregated**

The Department and DIA fulfilled their FOIA obligation to release all reasonably segregable, non-exempt information to Stevens. FOIA says that any "reasonably segregated" portion of a record must be produced after "deletion of the portions which are exempt under this

subsection." 5 U.S.C. § 552(b). But if the proportion of nonexempt material is "relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden," then the material remains FOIA-protected because, "athough not exempt, it is not reasonably segregable." *Lead Indus. Ass'n, Inc. v. OSHA*, 610 F.2d 70, 86 (2d Cir. 1979). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable materials. *Stevens*, 2014 WL 5796429 at *9. The court, nonetheless, must make an express finding on the issue of segregability. *Patterson v. I.R.S.*, 56 F.3d 832, 840 (7th Cir. 1995) (remanding when court made no segregability finding).

Here, the Department and DIA carefully examined each responsive document line by line to determine which information could be reasonably segregated. DSOF ¶¶ 52-53. For all of the responsive documents whose withholdings are at issue, the Department and DIA concluded that it could not further segregate meaningful information without disclosing protected information. *Id*. Ultimately, the Department and DIA withheld in full only a small proportion of the responsive documents. For Request 3180, the Department produced 400 records in full or in part and denied in full only 20 records. *Id*. ¶ 49. For Request 3575, the Department produced 31 documents in full or in part and denied in full only 2 documents. *Id*. ¶ 51. DIA withheld in full one document. *Id*. ¶ 49. The low proportion of documents withheld in full, the presumption in favor of the government, and the lack of evidence rebutting this presumption demonstrates that the Department and DIA have met their burden of showing that no segregable, non-exempt portions of the records were withheld. *See Matter of Wade*, 969 F.2d 241, 246 (7th Cir. 1992) (veracity of government's submissions regarding reasons for withholding documents should not be questioned without evidence of bad faith).

## Conclusion

For the reasons above, summary judgment should be granted in favor of the Department.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Alex Hartzler
ALEX HARTZLER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-1390
alex.hartzler@usdoj.gov