UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 2494 |
| v. | ) | |
| | ) | Judge Lee |
| UNITED STATES DEPARTMENT OF | ) | |
| STATE, | ) | |
| | ) | |
| Defendant. | ) | |

**L.R. 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT
OF THE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

The United States Department of State, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, submits the following statement of material facts as to which there is no genuine issue pursuant to Local Rule 56.1 of the United States District Court for the Northern District of Illinois.

**Jurisdiction and Venue**

1.     This is an action brought under the Freedom of Information Act (FOIA), and the court has subject matter jurisdiction under 5 U.S.C. § 552 and 28 U.S.C. § 1331.  Dkt. 12 (Answer) ¶ 3.

2.     Venue is proper in this district because plaintiff Jacqueline Stevens resides in this district.  *Id*. ¶ 4.

**Parties**

3.     Plaintiff Jacqueline Stevens is a professor at Northwestern University.  *Id*. ¶ 5.

4.     The United States Department of State is an executive agency of the United States government.  *Id*. ¶ 6.

**Request F-2015-03180**

5.     Stevens submitted a FOIA request to the Department on February 11, 2015, seeking, from January 1, 2005, to present:

> All State HQ and consular Qatar materials in all systems [sic.] records and elsewhere referencing Northwestern University's Qatar campus. Material requested includes but is not limited to memorandums, cables or e-mails, notes, reports, correspondence with other agencies, members of Congress (or staff), and private firms or individuals.

Ex. A (Stein Dec.) ¶ 4.

6.     On February 12, 2015, the Department responded by letter acknowledging receipt of Stevens's FOIA request and assigning control number F-2015-03180 to the request. *Id*. ¶ 5.

7.     The Department determined that the following records systems and offices were reasonably likely to have documents responsive to Request F-2015-03180: the State Archiving System, the Retired Records Inventory Management System, the U.S. Embassy in Doha, the Bureau of Diplomatic Security, the Bureau of Near Eastern Affairs, the Bureau of International Information Programs, the Policy Planning Staff, and the Office of the Undersecretary for Management. *Id*. ¶ 13.

8.     A Department specialist knowledgeable of both the request and the State Archiving System searched for documents containing the term "Northwestern" and retrieved 25 responsive documents. *Id*. ¶¶ 14-15. The State Archiving system provides the ability to query over 40 million records through a single interface. *Id*. ¶ 14, including cables, diplomatic notes, and official correspondence. *Id*.

9.     A Department specialist knowledgeable of both the request and the Retired Record Inventory Management System conducted a search of the system using the term "Northwestern" and identified no responsive records. *Id*. ¶¶ 16-17.

10.     An officer knowledgeable of both the request and the records system of the U.S. Embassy in Doha, Qatar, searched certain locations within the Embassy for documents containing the term "Northwestern" and retrieved 396 responsive documents.  *Id.* ¶¶ 18-19.

11.     A Bureau of Diplomatic Security analyst knowledgeable of both the request and the relevant record systems searched certain locations in the Overseas Security Advisory Council within the Threat Investigations and Analysis Directorate and Policy and Planning Division within the Office of Management for documents containing the terms "Northwestern" or "University" and identified no responsive records.  *Id.* ¶¶ 20-23.

12.     An adviser in the Bureau of Near Eastern Affairs knowledgeable of both the request and the relevant records systems searched certain locations in the Bureau's Office of Arabian Peninsula Affairs for documents containing the term "Northwestern University" and found no responsive records.  *Id.* ¶¶ 24-25.

13.     An adviser in the Bureau of International Information Programs knowledgeable of both the request and the relevant records systems searched certain locations within the Bureau for documents containing the term "Northwestern University" and identified no responsive records. *Id.* ¶ 26.  Additionally, the Bureau's Director of the Office of the U.S. Speaker Program, who was knowledgeable of both the request and the U.S. Speaker Program's records system, searched certain locations within that office for documents containing the terms "Qatar," "Doha," "Northwestern," "Film," or "Richard Pena" and found no responsive records.  *Id.* ¶ 27.

14.     A Policy Planning Staff employee knowledgeable of both the request and the relevant records systems searched certain locations within that office for documents containing the terms "Northwestern," "University," "Campus," "Qatar," or "Doha," and found no responsive records.  *Id.* ¶¶ 28-30.

3

15. The Undersecretary for Management, who was knowledgeable of both the request and the relevant records systems, searched certain locations within his office for documents containing the term "Northwestern" and found no responsive records. *Id.* ¶¶ 31-32.

16. The Department determined that the following offices and bureaus were not reasonably likely to maintain records responsive to Request F-2015-03180 because the topics of the request were not within the scope of their work: the Policy, Planning, and Resources Office of the Office of the Undersecretary for Public Diplomacy; the Office of the Chief of Protocol; the Bureau of Intelligence and Research; the Office of Overseas Schools in the Bureau of Administration; the Office of Languages Services in the Bureau of Administration; the White House Liaison's Office (which reports to the Office of the Undersecretary for Management); the Office of Management Policy, Rightsizing, and Innovation (same); the Bureau of Budget and Planning (same); the Bureau of the Comptroller and Global Financial Services (same); and the Bureau of Educational and Cultural Affairs. *Id.* ¶¶ 33. (The Department's March 23, 2016 letter to Stevens said that the Department had conducted searches of the Bureau of Budget and Planning, the Bureau of Educational and Cultural Affairs, and the Office of the Comptroller and Global Financial Services, but in fact those offices had confirmed that they were not reasonably likely to have responsive records. *Id.* ¶ 33 n.5.)

17. Before Stevens filed this lawsuit, the Department made two productions of responsive documents, by letters dated March 23, 2016, and June 13, 2016. *Id.* ¶ 5. Additionally, the Department referred one document to the Defense Intelligence Agency (DIA) for direct reply to Stevens. Ex. B (Williams Dec.) ¶ 4. DIA responded to Stevens on June 28, 2017, denying in full the release of that document. *Id.*. DIA operates under guidance from the Director of National Intelligence. *Id.* ¶ 17.

4

18.     In August 2017, the Department told Stevens that its searches for documents responsive to Request F-2015-03180 had located a large number of potentially responsive documents.  Ex. A (Stein Dec.) ¶ 6.  The parties agreed that the Department could reduce the number of documents needed to be processed by using keywords to narrow the results of the searches.  *Id.*

19.     The Department made ten productions of responsive documents after Stevens filed the complaint, by letters dated June 9, 2017; July 7, 2017; August 7, 2017; September 6, 2017; October 5, 2017; November 6, 2017; December 5, 2017; January 4, 2018; February 5, 2018; and May 17, 2018.  *Id.* ¶ 7.

### Request F-2015-03181

20.     Stevens submitted a second FOIA request to the Department on February 11, 2015, seeking policy and planning materials relating to establishing American universities abroad.  Ex. A (Stein Dec.) ¶ 8.  The Department assigned control number F-2015-03181 to the request.  *Id.*

21.     After Stevens filed this lawsuit, she agreed to narrow the request to read:

> [A]ll *policy and planning materials* pertaining to *establishing U.S. university campuses in Qatar, Abu Dhabi, South Korea, China, and Singapore.

*Id.* ¶ 8.  The timeframe of the request was 2003 to present.  *Id.*

22.     The Department determined that the following records systems and offices were reasonably likely to have documents responsive to Request F-2015-03181: the State Archiving System, the Retired Records Inventory Management System, the Bureau of Diplomatic Security, the U.S. Embassy in Doha, the U.S. Embassy in Abu Dhabi, the U.S. Embassy in Beijing, the U.S. Consulate in Shanghai, the U.S. Embassy in Seoul, the U.S. Embassy in Singapore, the Bureau of East Asian and Pacific Affairs, and the Bureau of Near Eastern Affairs.  *Id.* ¶ 13.

5

23.     A Department specialist knowledgeable of both the request and the State Archiving

System searched for documents containing any of the following terms and found no responsive

records:

- "Abu Dhabi" and "University"
- "New York University"
- "University" and "Singapore"
- "Wharton"
- "University of Chicago"
- "Stanford"
- "Georgia Tech"
- "Johns Hopkins"
- "MIT"
- "Duke"
- "Qatar" and "University"
- "Weill"
- "Cornell Medical College"
- "Texas A&M"
- "Carnegie Mellon University"
- "Georgetown"
- "Education City" and "Qatar"
- "Northwestern"
- "SUNY Korea"
- "George Mason Korea"
- "University of Utah" within 2 words of ("w/2") "Asia"
- "Wenzhou-Kean"
- "Duke" w/2 "Kunshan"
- "NYU-Shanghai"
- "New York University" w/2 "Shanghai"
- "Hopkins" w/2 "Nanjing"
- "University of Chicago" w/2 "Shanghai"
- "Savannah College" w/2 "Hong Kong"

*Id*. ¶¶ 34-35.

24. A Department specialist knowledgeable of both the request and the Retired Records Inventory Management System conducted a search of the system using the following terms and found no responsive records:

- "Abu Dhabi" and "University"
- "New York University"
- "University" and "Singapore"
- "Wharton"
- "University of Chicago"
- "Stanford"
- "Georgia Tech"
- "Johns Hopkins"
- "MIT"
- "Duke"
- "Qatar" and "University"
- "Weill"
- "Cornell Medical College"
- "Texas A&M"
- "Carnegie Mellon University"
- "Georgetown"
- "Education City" and "Qatar"
- "Northwestern"
- "SUNY Korea"
- "George Mason Korea"
- "University of Utah" and "Asia"
- "Wenzhou-Kean"
- "Duke" and "Kunshan"
- "NYU-Shanghai"
- "New York University" and "Shanghai"
- "Hopkins" and "Nanjing"
- "University of Chicago" and "Shanghai"
- "Savannah College" and "Hong Kong"

*Id*. ¶¶ 36-37.

25. A Bureau of Diplomatic Security analyst knowledgeable of both the request and the relevant records systems searched certain locations in the Policy and Planning Division within

7

the Office of Management for documents containing the combination of terms ("University" or "College Campus Overseas") and ("Creation" or "Establishment" or "Setup" or "Assistance") and found no responsive records. *Id*. ¶¶ 38, 40. An officer knowledgeable of the request and the relevant records systems also searched certain locations in the Overseas Security Advisory Council within the Threat Investigations and Analysis Directorate for documents containing the combination of terms ("Education City" or "Qatar Foundation" or "Abu Dhabi" or "Singapore") and ("University" or "College Campus") and found no responsive records. *Id*. ¶¶ 39-40. That officer also searched for documents containing the terms "Assistance" or "University" and found no responsive records. *Id*.

26.   An officer knowledgeable of both the request and the records system of the U.S. Embassy in Doha, Qatar, searched certain locations in the Embassy for documents containing the terms "Education City" or "Qatar Foundation" and found no responsive records. *Id*. ¶ 41.

27.   An officer knowledgeable of both the request and the records system of the U.S. Embassy in Abu Dhabi, United Arab Emirates, searched certain locations in the Embassy for documents containing the terms "University," "U.S. University," "Branch Campus," "Education City," or "Campus," and found no responsive records. *Id*. ¶¶ 42-43.

28.   An officer knowledgeable of both the request and the records system of the U.S. Embassy in Beijing, China, searched certain locations in the Embassy for documents containing any of the following terms and found no responsive records:

- "Kean University"
- "Wenzhou-Kean"
- "Duke University"
- "Duke-Kunshan"
- "NYU-Shanghai"
- "New York University"
- "Hopkins-Nanjing"

- "University of Chicago"
- "Savannah College"

*Id*. ¶ 44.

29.     Three Department employees knowledgeable of both the request and the records systems of the U.S. Consulate in Shanghai, China, searched certain locations in the Consulate for documents containing any of the following terms and found no responsive records:

- "Kean University"
- "Wenzhou-Kean"
- "Duke University"
- "Duke-Kunshan"
- "NYU-Shanghai"
- "New York University"
- "Hopkins-Nanjing"

*Id*. ¶ 45.

30.     An officer knowledgeable of both the request and the records systems of the U.S. Embassy in Seoul, South Korea, searched certain locations in the Embassy for documents containing the terms "Songdo," "SUNY Korea," "George Mason Korea," or "Utah Asia" and found no responsive records.  *Id*. ¶ 46.

31.     An officer knowledgeable of both the request and the records systems of the U.S. Embassy in Singapore searched certain locations in the Embassy for documents containing the combination of terms ("College" or "University") and ("Establish" or "Assistance" or "Agreement") and "Campus" and "Singapore" and found no responsive records.  *Id*. ¶ 47.

32.     An officer knowledgeable of both the request and the records systems of the Office of Korean Affairs within the Bureau of East Asian and Pacific Affairs' searched certain locations within the Office for documents containing the term "University" and found no responsive records. *Id*. ¶¶ 48-49.

33.     An officer knowledgeable of both the request and the records systems of the Office of Maritime of Southeast Asia within the Bureau of East Asian and Pacific Affairs' searched certain locations within the Office for documents containing the term "University" and found no responsive records.  *Id*. ¶¶ 48, 50.

34.     An officer knowledgeable of both the request and the records systems of the Office of Arabian Peninsula Affairs within the Bureau of Near Eastern Affairs' searched certain locations within the Office for documents containing the terms ("University" and "Abu Dhabi") or ("Campus" and "Abu Dhabi") and found no responsive records.  *Id*. ¶ 51.

35.     The Department also contacted the following offices and bureaus, who confirmed that they were not reasonably likely to maintain records responsive to the request because the topic of the request was not within the scope of their work: the Policy, Planning, and Resources Office of the Office of the Undersecretary for Public Diplomacy; the Office of the Chief of Protocol; the Bureau of Intelligence and Research; the Office of Overseas Schools in the Bureau of Administration; the Office of Language Services in the Bureau of Administration; the White House Liaison's Office (which reports to the Office of the Undersecretary for Management); the Bureau of Budget and Planning (same); the Bureau of Budget and Planning (same); the Bureau of International Information Programs; the Bureau of Educational and Cultural Affairs; and the Office of Policy planning Staff in the Office of the Secretary.  *Id*. ¶ 52.

36.     On December 5, 2017, the Department informed Stevens by letter that it had completed its search and found no records responsive to the request.  *Id*. ¶ 9.

**Request F-2015-03575**

37.     Stevens submitted a third FOIA request to the Department on February 18, 2015, seeking documents maintained by either the U.S. Agency International Development (USAID)

and its components or the Middle East Partnership Initiative (MEPI) and its components regarding government funds transferred to the Independent Center of Journalists, Northwestern University and its components, and the Center(s) for Journalism Excellence. *Id*. ¶ 10. The Department assigned control number F-2015-03575 to the request. *Id*.

38.     After filing this lawsuit, Stevens agreed to narrow her request to read:

> 1) All contracts, memoranda, reports, notes, email, documents/correspondence sent to and from USAID and any other material in any medium produced, received or maintained by the Middle East Partnership Initiative and its components from January 1, 2004 to present concerning U.S. Government funds transferred to the Independent Center of Journalists.
>
> 2) All contracts, memoranda, reports, notes, email, documents/correspondence sent to and from USAID or any other material in any medium produced, received or maintained by the Middle East Partnership Initiative and its components from January 1, 2004 to present concerning Northwestern University and its components, including but not limited to the Medill School of Journalism.
>
> 3) All contracts, memoranda, reports, notes, email, documents/correspondence set to and from USAID and any other material in any medium produced, received or maintained by the Middle East Partnership Initiative and its components from January 1, 2004 to present concerning Center(s) of Journalism Excellence.

*Id*.

39.     The Department determined that the Retired Records Inventory Management System and the Bureau of Near Eastern Affairs (in which MEPI is located) were reasonably likely to have documents responsive to Request F-2015-03575. *Id*. ¶ 13.

40.     A specialist with knowledge of both the request and the Retired Records Inventory Management System conducted a search of the system using the terms, "MEPI," "Northwestern," "Medill," "Center for Journalism Excellence," or "Independent Center of Journalists," and found no responsive records. *Id*. ¶ 53.

41. A specialist knowledgeable of both the request and the records systems of the Office of Assistance Coordination within the Bureau of Near Eastern Affairs searched certain locations in the Office for documents containing the terms "Northwestern," "Medill," "Independent Center of Journalists," "Center of Journalism Excellence," "Center," or "Journalism" and retrieved 23 responsive documents. *Id.* ¶ 54-56.

42. The department produced responsive documents on June 9, 2017; July 7, 2017; January 4, 2018; and May 17, 2018. *Id.* ¶ 10.

### FOIA Exemption 1 – Classified Information

43. The Department and DIA withheld information under Exemption 1, 5 U.S.C. § 522(b)(1). Ex. A (Stein Dec.) ¶¶ 57-71; Ex. B (Williams Dec.) ¶¶ 4-13. The Department and DIA have determined that the information withheld under Exemption 1 continues to meet the classification criteria of Executive Order 13526, including information currently classified at the "Secret" and "Confidential" levels. *Id.*; *see also Vaughn* index (Ex. 1 to Stein Dec.).

### FOIA Exemption 3 – Information Protected by Statute

44. DIA has withheld information under Exemption 3, 5 U.S.C. § 552(b)(3). Ex. B (Williams Dec.) ¶¶ 14-17. DIA has withheld information about the agencies, countries, and organizations with which DIA shares intelligence information, because revealing that information would give insight into how DIA fulfills its intelligence-collection function and would reveal intelligence sources and methods. *Id.* DIA has also withheld phone numbers, email addresses, and office symbols, which individually and combined would shed light on its organizational structure and function. *Id.*

## FOIA Exemption 4 – Business Information

45.     The Department has withheld information under Exemption 4, 5 U.S.C. § 552(b)(4).  Ex. A (Stein Dec.) ¶¶ 72-74.  As detailed in the Department's *Vaughn* index, the Department has withheld commercial information that was voluntarily submitted by an individual to demonstrate the type of courses she could teach for an event held by the U.S. Embassy in Doha. *Id*.  Due to the submission's voluntary nature, the Department found the information privileged and confidential within the meaning of Exemption 4 because the information would not customarily be disclosed to the public.  *Id*.

## FOIA Exemption 5 – Litigation Privileges

46.     The Department has withheld information under Exemption 5's deliberative-process privilege, 5 U.S.C. § 552(b)(5).  Ex. A (Stein Dec.) ¶¶ 75-78.  As detailed in the Department's *Vaughn* index, the Department has withheld drafts of official Department communications such as cables and PowerPoint presentations that contain the author's recommendations regarding what text and information the documents should include; internal Department discussions, recommendations, and opinions regarding potential agendas for people visiting Doha, Qatar; assessments and opinions by Department employees regarding whom to include on these agendas; and a briefing paper for a senior agency official that was drafted to inform and advise him on his approach to meeting with a foreign counterpart.  *Id*.

## FOIA Exemption 6 – Personal Privacy

47.     The Department has withheld information under Exemption 6, 5 U.S.C. § 552(b)(6).  *Id*. ¶¶ 79-81.  As detailed in the Department's *Vaughn* index, the Department has found that a personal privacy interest exists in the withheld information and that the personal privacy interest outweighed the public interest in the information's disclosure.  *Id*.  The

Department determined that there is no public interest in the information's release, because releasing the information would shed no light on the Department's operations and activities. *Id.*

### Summary

48.     The Department conducted a thorough search of all Department locations that were reasonably likely to contain records responsive to Stevens's FOIA requests. *Id.* ¶ 82.

49.     For request F-2015-03180, the Department retrieved 421 responsive records. Of those records, the Department released 101 in full, released 299 in part, and withheld 20 in full. Additionally, one document sent for direct reply to the Defense Intelligence Agency was denied in full. *Id.*

50.     For request F-2015-03181, the Department found no responsive records. *Id.*

51.     For request F-2015-03575, the Department retrieved 33 responsive records. Of those records, the Department released 29 in full, released 2 in part, and withheld 2 in full. *Id.*

52.     The Department has carefully reviewed all of documents containing exempt information for reasonable segregation of non-exempt information and has implemented segregation where possible. For the documents withheld in full, the Department has determined that it cannot segregate meaningful information without disclosing information warranting protection under the law. *Id.* ¶ 83.

53.     DIA has carefully reviewed the document it withheld line-by-line for reasonably segregable information and has determined that it cannot reasonably segregate portions of the document.  Ex. B (Williams Dec.) ¶ 18.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Alex Hartzler
       ALEX HARTZLER
       Assistant United States Attorney
       219 South Dearborn Street
       Chicago, Illinois 60604
       (312) 886-1390
       alex.hartzler@usdoj.gov

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 2494 |
| v. | ) | |
| | ) | Judge Lee |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1.      I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department") and have served in this capacity since January 22, 2017.  Previously, I was the Acting Co-Director since March 21, 2016.  I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other applicable records access provisions.  Prior to serving in this capacity, from April 2013, I worked directly for the Department's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues related to GIS' offices and programs, which include IPS.  As the Director of IPS, I have original classification authority, and I am authorized to classify and declassify national security information.  I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.  I am familiar with the efforts of Department personnel to process the subject requests, and I am in charge of coordinating the agency's search and recovery efforts with respect to those requests.

1

2.      The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

3.      This declaration explains the Department's search for records responsive to Plaintiff's three FOIA requests and the FOIA exemptions applied in processing the responsive records produced to Plaintiff.  Additionally, the Plaintiff in this matter provided the Department a list of withholdings in records responsive to her request that she is challenging.  A *Vaughn* Index (Exhibit 1) provides a detailed description of that withheld information and the justifications for those withholdings.

## I.      ADMINISTRATIVE PROCESSING OF PLAINTIFF'S REQUESTS

### Request F-2015-03180

4.      Plaintiff submitted a FOIA request to the Department on February 11, 2015, (Exhibit 2), seeking:

> All State HQ and consular Qatar materials in all systems [sic.] records and elsewhere referencing Northwestern University's Qatar campus. Material requested includes but is not limited to memorandums, cables or e-mails, notes, reports, correspondence with other agencies, members of Congress (or staff), and private firms or individuals.

The timeframe of the request was January 1, 2005, to present.

5.      By letter dated February 12, 2015 (Exhibit 3), IPS acknowledged receipt of Plaintiff's FOIA Request and assigned it Case Control Number F-2015-03180.  Before the Complaint in this matter was filed, the Department made two productions of responsive documents to Plaintiff by letters dated March 23, 2016, and June 13, 2016 (Exhibits 4-5).  Additionally, one document was referred to the Defense Intelligence Agency for direct reply to Plaintiff.  The Defense Intelligence Agency replied to Plaintiff on June 28, 2017, denying in full the release of that document.

6.      After the Complaint in this matter was filed, the Department informed Plaintiff in August of 2017 that the Department's search for documents responsive to Request F-2015-03180 had located a large number of potentially responsive documents.  The parties agreed that the Department could further narrow the results of these searches and reduce the number of documents that it must process in response to Plaintiff's request by applying certain keywords[1] to the initial search results.

7.      After the Complaint was filed in this matter, the Department made ten productions of responsive documents to Plaintiff by letters dated June 9, 2017; July 7, 2017;

---

[1] These keywords included the following: "offset*," "contract*," "agreement*," "censor*," "Al Jazeera," "request for Proposal*," "intelligence," "boeing," "natural gas," "optics," "RFP," "sales," "weapons," "train*," "Bienen," "Dennis," "arrest," "jail," "image," "general dynamics," and "caterpillar."

August 7, 2017; September 6, 2017; October 5, 2017; November 6, 2017; December 5, 2017[2];

January 4, 2018[3]; February 5, 2018; and May 17, 2018. (Exhibits 6-15).

### Request F-2015-03181

8.      Plaintiff submitted another FOIA request to the Department on February 11, 2015

(Exhibit 16), seeking policy and planning materials pertaining to establishing U.S. universities

abroad.  The Department assigned the request Case Control Number F-2015-03181 (Exhibit 17).

After Plaintiff filed her Complaint, she agreed to narrow her request to the following:

> [A]ll *policy and planning materials* pertaining to *establishing
> U.S. university campuses in Qatar, Abu Dhabi, South Korea,
> China, and Singapore.

The timeframe of the request was January 1, 2003, to present.

9.      By letter dated December 5, 2017 (Exhibit 18), the Department informed Plaintiff

that it had completed its search and found no records responsive to her request.

### Request F-2015-03575

10.      Plaintiff submitted a third FOIA request to the Department on February 18, 2015

(Exhibit 19), seeking documents maintained by either the U.S. Agency International

Development ("USAID") and its components, or the Middle East Partnership Initiative ("MEPI")

and its components concerning government funds transferred to the Independent Center of

Journalists, Northwestern University and its components, and the Center(s) for Journalism

---

[2] The letter accompanying this production stated that the Department was releasing 12 documents in full and denying two documents in full in response to Plaintiff's request on that date. In fact, 8 documents were released in full and three documents were denied in full as part of that production.

[3] The letter accompanying this production stated that the Department was releasing 30 documents in part in response to Plaintiff's request on that date.  In fact, 29 documents were released in part as part of that production.

Excellence.  The Department assigned this request Case Control Number F-2015-03575 (Exhibit

20) on February 26, 2015.  After Plaintiff filed her Complaint, Plaintiff acknowledged that

requests for documents generated by USAID had to be directed to USAID, and agreed to narrow

her request to the following:

1) All contracts, memoranda, reports, notes, email, documents/correspondence sent to
and from USAID and any other material in any medium produced, received or
maintained by the Middle East Partnership Initiative and its components from January
1, 2004 to present concerning U.S. Government funds transferred to the Independent
Center of Journalists.

2) All contracts, memoranda, reports, notes, email, documents/correspondence sent to
and from USAID or any other material in any medium produced, received or
maintained by the Middle East Partnership Initiative and its components from January
1, 2004 to present concerning Northwestern University and its components, including
but not limited to the Medill School of Journalism.

3) All contracts, memoranda, reports, notes, email, documents/correspondence sent to
and from USAID and any other material in any medium produced, received or
maintained by the Middle East Partnership Initiative and its components from January
1, 2004 to present concerning Center(s) of Journalism Excellence.

The Department made four productions of responsive documents to Plaintiff by letters

dated June 9, 2017, July 7, 2017, January 4, 2018, and May 17, 2018 (Exhibits 21-24).

## II. THE SEARCH PROCESS

11.     When the Department receives a FOIA request, IPS evaluates the request to

determine which offices, overseas posts, or other records systems within the Department are

reasonably likely to contain the records requested.  This determination is based on the

description of the records requested and requires a familiarity with the holdings of the

Department's records systems, applicable records disposition schedules, and the substantive and

functional mandates of numerous Department offices and Foreign Service posts and missions.

5

12.     Each office within the Department, as well as each Foreign Service post and mission, maintains files concerning foreign policy and other functional matters related to the daily operations of that office, post, or mission.  These files consist generally of working copies of documents, information copies of documents maintained in the State Archiving System, and other documents prepared by or furnished to the office in connection with the performance of its official duties.

13.     After reviewing Plaintiff's requests and consulting with several offices and bureaus within the Department, IPS determined that the following offices or records systems were reasonably likely to have documents responsive to Plaintiff's requests:

a.   Request F-2015-03180: the State Archiving System, the Retired Records Inventory Management System, the U.S. Embassy in Doha, the Bureau of Diplomatic Security, the Bureau of Near Eastern Affairs, the Bureau of International Information Programs, the Policy and Planning Staff, and the Office of the Undersecretary for Management;

b.   Request F-2015-03181: the State Archiving System, the Retired Records Inventory Management System, the Bureau of Diplomatic Security, the U.S. Embassy in Doha, the U.S. Embassy in Abu Dhabi, the U.S. Embassy in Beijing, the U.S. Consulate in Shanghai, the U.S. Embassy in Seoul, the U.S. Embassy in Singapore, the Bureau of East Asian and Pacific Affairs, and the Bureau of Near Eastern Affairs; and

c.   Request F-2015-03575: the Retired Records Inventory Management System and the Bureau of Near Eastern Affairs in which MEPI is located.

## A. REQUEST F-2015-03180[4]

### State Archiving System

14.     The State Archiving System ("SAS") provides the capability to query over 40 million records through a single interface.  These records include those documents that discuss or define foreign policy, set precedents, or require action or use by more than one office.  More specifically, SAS provides search capability and access to (a) the official record copies of almost all incoming and outgoing cables between the Department and Foreign Service posts; (b) diplomatic notes; (c) correspondence to and from the White House, members of Congress, and other federal agencies; (d) position papers and reports; (e) memoranda of conversations; (f) interoffice memoranda; and (g) retired permanent records maintained in the electronic Records Service Center.  The records contained within SAS are commonly referred to as the "Central Foreign Policy Files" or the "Central File."  SAS generally allows the Department to conduct full-text searches of records.  For all documents in the Central File that are not directly full-text searchable through SAS, including some older correspondence, SAS will search the text of a customized reference index that directs a searcher to a full copy of the document.

15.     An IPS Government Information Specialist, who was knowledgeable of both the request and the SAS records system, conducted a search using the term "Northwestern."  This search retrieved 25 responsive documents.

### The Retired Records Inventory Management System

---

[4] The following sections describe the Department's initial search for documents responsive to Request F-2015-03180.  During the course of it processing of this request, the Department applied additional keywords to narrow the results of these searches. *See supra* n. 1.

7

16.     The Department's Retired Record Inventory Management System ("RIMS") is a searchable database that automates the processing of records retired to the Records Service Center and tracks the status of all boxes received at the Records Service Center from the point of receipt to ultimate disposition. IPS Government Information Specialists can search both the full-text of the retired file manifests as well as the metadata (i.e., database fields) in the RIMS database. The retired file manifests serve as an index of the contents of retired paper and electronic files and are used to direct a researcher to particular file folders or documents in retired files. On occasion, manifests do not contain sufficient detail to indicate the exact contents maintained under a given subject. Therefore, when any potentially responsive files are identified, those files or boxes must be retrieved for a more detailed manual search of their entire contents.

17.     An IPS Government Information Specialist, who was knowledgeable of both the request and the RIMS system, conducted a search using the term "Northwestern." No responsive records were identified as a result of that search.

## U.S. Embassies and Consulates

18.     In general, U.S. embassies conduct activities that are aimed at promoting U.S. foreign policy objectives and protecting both U.S. interests and U.S. citizens overseas. These embassies and consulates employ Foreign Service Officers and Specialists, as well as locally employed staff. Each embassy and consulate has unique staffing patterns and records management systems. All of the individuals who conducted the searches of the U.S. embassies and consulates at issue were knowledgeable about the records systems of their respective posts.

8

*U.S. Embassy in Doha, Qatar*

19.     An Information Management Officer ("IMO"), who was knowledgeable of both the request and Embassy Doha records systems, searched the electronic unclassified and classified email records of employees in the Public Affairs Section, Economic Section, and Political section using the search term "Northwestern."   He also searched the Embassy's shared drives and all print and exchange servers using the term "Northwestern."  No date restrictions were applied to these searches.  As a result of these searches and after IPS applied key words provided by Plaintiff, Embassy Doha's search yielded 396 responsive documents.

### Bureau of Diplomatic Security

20.     The Bureau of Diplomatic Security ("DS") is responsible for providing a safe and secure environment for the conduct of U.S. foreign policy.  Every U.S. diplomatic mission operates under a security program designed and maintained by DS.  DS's Freedom of Information and Privacy Act Office ("DS/MGT/FOIA-PA") reviews all incoming FOIA requests, determines which DS components are reasonably likely to have responsive records, and then tasks those components with performing searches.

21.     The Threat Investigations and Analysis Directorate ("DS/TIA") is comprised of the Office of Intelligence and Threat Analysis, Diplomatic Security Command Center, Office of Overseas Security, and the Office of Protective Intelligence Investigations.  DS/TIA analyzes, assesses, and disseminates information to protect American interests worldwide.  DS/TIA investigates, mitigates, and manages threats to enhance the safety and security of those engaged in U.S. diplomacy.  The Overseas Security Advisory Council ("DS/TIA/OSAC") exists to promote security cooperation with U.S. private-sector interests worldwide.  DS/TIA/OSAC's goal is to support U.S. organizations by sharing timely and actionable security information and

developing efficient and cost-effective communication networks that provide the private sector with the tools needed to address security-related issues in a foreign environment.

22.     The Office of the Executive Director ("DS/EX") is comprised of the Office of Management, the Chief Financial Office, and the Human Resources Management Division.  The Office of Management ("DS/EX/MGT") provides a broad range of essential management services and administrative functions in support of the Bureau of Diplomatic Security's strategic goals, which include: (1) improving and enhancing DS infrastructure to support global mission activities; and, (2) developing and leading a diverse, uniquely skilled professional workforce. The mission of the Policy and Planning Division ("DS/MGT/PPD") within the Office of Management is to provide high quality expertise, articulation and counsel in policy, strategic planning, and evaluation in support of Diplomatic Security (DS) operations worldwide.

23.     A Policy Analyst in DS/TIA, who was knowledgeable of the FOIA request at issue and the record systems of both DS/TIA/OSAC and DS/MGT/PPD, conducted a search of the unclassified and classified DS/TIA/OSAC and DS/MGT/PPD network shared drives using the search terms "Northwestern" or "University."  The DS/TIA/OSAC search was limited to January 2010, the earliest date that records were available in this office, through the date of the search.  No date restrictions were applied to the DS/MGT/PPD search.  No responsive documents were retrieved as a result of these searches.

**Bureau of Near Eastern Affairs**

24.     The Bureau of Near Eastern Affairs ("NEA") is charged with advising the Secretary of State on matters in North Africa and the Middle East.  Regional policy issues that NEA handles include Iran, Iraq, peace in the Middle East, terrorism and weapons of mass destruction, and political and economic reform.  The Office of Arabian Peninsula Affairs

("NEA/ARP") is responsible for the assisting and promoting diplomatic issues associated with Bahrain, Kuwait, Oman, Qatar, Saudi Arabia, the United Arab Emirates, and Yemen.

25.     A Special Adviser responsible for Qatari affairs in NEA/ARP, who was knowledgeable of both the FOIA request at issue and NEA/ARP's records systems, conducted searches of his unclassified and classified email records and the NEA/ARP network shared drive using the search term "Northwestern University." The search was limited to January 1, 2003, through the date of the search. No responsive records were located as a result of this search.

## Bureau of International Information Programs

26.     The Bureau of International Information Programs ("IIP") provides the Department with a worldwide outreach platform for public diplomacy. This bureau partners with policy experts and missions abroad to design and execute outcome-oriented programs that engage foreign audiences to advance U.S. foreign policy. A Special Adviser in IIP, who was knowledgeable of both the FOIA request at issue and IIP's records systems, conducted a search of his unclassified email records, cloud-based platforms, and the IIP network shared drive using the search term "Northwestern University." These searches were limited to the date range of January 1, 2005, through the date of the search. No responsive records were located as a result of this search.

27.     The Office of the U.S. Speaker Program in IIP works with posts to arrange in-country and virtual programs that enable more than 600 American experts to engage foreign audiences directly on U.S. foreign policy priorities. The Director of the Office of the U.S. Speaker Program, who was knowledgeable of both the FOIA request at issue and the U.S. Speaker Program's records systems, conducted a search of her unclassified email records, and the U.S. Speaker Program's shared database, Tracker II. Tracker II retains data on programs

implemented by the U.S. Speaker Program. The search terms used were "Qatar," "Doha," "Northwestern," "Film," or "Richard Pena." The search was limited to January 1, 2005, through the date the search was conducted. No responsive records were located as a result of these searches.

## Policy Planning Staff

28.    The Policy Planning Staff ("S/P") serves as a source of independent policy analysis and advice for the Secretary of State. S/P's mission is to take a longer term, strategic view of global trends and frame recommendations for the Secretary of State to advance U.S. interests and American values. The work of S/P is divided into six areas: analysis, special projects, policy coordination, policy articulation, liaison, planning talks, and dissent.

29.    An employee in S/P, who was knowledgeable of both the FOIA request at issue and S/P's records systems conducted a search of the unclassified and classified S/P network shared drives using the following search terms:

- "Northwestern"
- "University"
- "Campus"
- "Qatar"
- "Doha"

30.    These searches were limited to January 1, 2005, through the date of the search. No responsive records were located as a result of these searches.

## Office of the Undersecretary for Management

31.    The Under Secretary for Management ("M") oversees the activities of ten bureaus and offices that are responsible for management improvement initiatives; security; the Department's information technology infrastructure; support services for domestic and overseas

12

operations; consular affairs; and personnel matters, including, recruitment, career development, training, medical services, and retirement programs.

32.     The Under Secretary for Management, who was knowledgeable of both the request and the M records systems, conducted a search of unclassified state.gov email records and Everest using the term "Northwestern."  These searches were limited to the date range of December 19, 2005, through June 28, 2015.  No responsive records were located as a result of these searches.

**Bureaus and Offices not Reasonably Likely to Maintain Records Responsive to Requests**

33.     IPS undertook further efforts to locate records to request F-2015-03180 by contacting the offices and bureaus listed below.  Each of these offices and bureaus confirmed that they were not reasonably likely to maintain records responsive to this request because the topic of this request was not within the scope of their work:

- The Policy, Planning, and Resources Office of the Office of the Under Secretary for Public Diplomacy

- The Office of the Chief of Protocol

- The Bureau of Intelligence and Research

- The Office of Overseas Schools in the Bureau of Administration

- The Office of Language Services in the Bureau of Administration

- The White House Liaison's Office, which reports to the Office of the Undersecretary for Management

- The Office of Management Policy, Rightsizing, and Innovation, which reports to the Office of the Undersecretary for Management

- The Bureau of Budget and Planning, which reports to the Office of the Undersecretary for Management.

13

- The Bureau of the Comptroller and Global Financial Services, which reports to the Office of the Undersecretary for Management

- The Bureau of Educational and Cultural Affairs[5]

As a result, the Department did not conduct searches of these offices and bureaus for records responsive to request F-2015-03180.

## B. REQUEST F-2015-03181

## State Archiving System

34.     An IPS Government Information Specialist, who was knowledgeable of both the request and the SAS records system, conducted searches in SAS using the following terms or combination of terms:

- "Abu Dhabi" and "University"
- "New York University"
- "University" and "Singapore"
- "Wharton"
- "University of Chicago"
- "Stanford"
- "Georgia Tech"
- "Johns Hopkins"
- "MIT"
- "Duke"
- "Qatar" and "University"
- "Weill"
- "Cornell Medical College"
- "Texas A&M"
- "Carnegie Mellon University"
- "Georgetown"

---

[5] In its March 23, 2016, letter to Plaintiff, the Department stated  it had conducted searches of the Bureau of Budget and Planning, the Bureau of Educational and Cultural Affairs, and the Office of the Comptroller & Global Financial Services.  In fact, these offices had not conducted searches, but instead had confirmed to IPS that they were not reasonably likely to have records responsive to this request.

14

- "Education City" and "Qatar"
- "Northwestern"
- "SUNY Korea"
- "George Mason Korea"
- "University of Utah" w/2[6] "Asia"
- "Wenzhou-Kean"
- "Duke" w/2 "Kunshan"
- "NYU-Shanghai"
- "New York University" w/2 "Shanghai"
- "Hopkins" w/2 "Nanjing"
- "University of Chicago" w/2 "Shanghai"
- "Savannah College" w/2 "Hong Kong"

35.     No responsive records were located as a result of these searches.

## The Retired Records Inventory Management System

36.     An IPS Government Information Specialist, who was knowledgeable of the FOIA request and the RIMS database, searched RIMS using the following terms or combination of terms:

- "Abu Dhabi" and "University"
- "New York University"
- University and Singapore
- "Wharton"
- "University of Chicago"
- "Stanford"
- "Georgia Tech"
- "Johns Hopkins"
- "MIT"
- "Duke"
- "Qatar" and "University"

---

[6] The use of "w/2"in SAS allows for searches to locate documents in which terms are within two words of each other.

- "Weill"
- "Cornell Medical College"
- "Texas A&M"
- "Carnegie Mellon University"
- "Georgetown"
- "Education City" and "Qatar"
- "Northwestern"
- "SUNY Korea"
- "George Mason Korea"
- "University of Utah" and "Asia"
- "Wenzhou-Kean"
- "Duke" and "Kunshan"
- "NYU-Shanghai"
- "New York University" and "Shanghai"
- "Hopkins" and "Nanjing"
- "University of Chicago" and "Shanghai"
- "Savannah College" and "Hong Kong"

37.     No responsive records were located as a result of these searches.

## Bureau of Diplomatic Security

38.     A DS Policy Analyst who was knowledgeable of the FOIA request at issue and DS/MGT/PPD's record systems conducted a search of DS/MGT/PPD's unclassified and classified shared drives and Office Sharepoint site using the following combination of search terms ("University" or "College Campus Overseas") and ("Creation" or "Establishment" or "Setup" or "Assistance"). These searches were restricted to January 2003 through the date of the search.

39.     A Foreign Affairs Officer who was knowledgeable of the FOIA request at issue and DS/TIA/OSAC's record systems conducted a search of the DS/TIA/OSAC unclassified and classified shared drives and OSAC.gov records repository using the following combination of search terms ("Education City" or "Qatar Foundation" or "Abu Dhabi" or "Singapore") and

16

("University" or "College Campus"). The Foreign Affairs Officer also conducted searches using the terms "Assistance" and "University." These searches were limited to January 2010, the earliest date that records were available in this office, through the date of the search.

40.     No responsive records were located as a result of these searches.

*U.S. Embassy in Doha, Qatar*

41.     An Information Management Officer ("IMO"), who was knowledgeable of both the request and Embassy Doha's records systems, searched electronic unclassified and classified email records of employees in the Public Affairs Section, Economic Section, and Political Section.  The IMO also searched all of Embassy Doha's shared drives and print and exchange servers.  The IMO used the terms "Education City" or "Qatar Foundation," in each search. No date restrictions were applied to these searches.  No responsive records were located as a result of these searches.

*U.S. Embassy in Abu Dhabi, United Arab Emirates*

42.     A Cultural Affairs Officer and Cultural Specialist, who were knowledgeable of both the request and Embassy Abu Dhabi's records systems searched the Public Affairs and Public Diplomacy Sections of the Embassy.  Educational and Cultural Affairs matters are maintained within the portfolio of the Public Affairs and Public Diplomacy Sections.

43.     The Cultural Affairs Officer and Cultural Specialist in the Public Affairs Section searched their unclassified email records.  Additionally, the Cultural Affairs Officer searched the shared drives of the Public Affairs and Public Diplomacy sections, from January 1, 2005, the earliest date available at Embassy Abu Dhabi, through the date of the search.  The Cultural Affairs Officer also searched the paper files of the Public Affairs and Public Diplomacy sections from January 1, 2013, the earliest date of records available at Embassy Abu Dhabi, through the

17

date of the search. The searches of paper files, unclassified email records, and shared drives used the terms "University," "U.S. University," "Branch Campus," "Education City," or "Campus." No responsive records were located as a result of these searches.

*U.S. Embassy in Beijing, China*

44.     A Cultural Affairs Officer, an Information Systems Officer, and an Office Management Specialist, who were knowledgeable of both the FOIA request at issue and Embassy Beijing's records systems, searched the paper files of the Public Affairs Officers, Education Officer, and Grant Files; the unclassified email and .pst files of the Senior Cultural Affairs Officer, Public Affairs Officer, and the Education Officer; and the shared drives for the Public Affairs Section, the Economic Section, the Political Section, and the Executive Office using the following search terms:

- "Kean University"
- "Wenzhou-Kean"
- "Duke University"
- "Duke-Kunshan"
- "NYU-Shanghai"
- "New York University"
- "Hopkins-Nanjing"
- "University of Chicago"
- "Savannah College"

These searches were limited to January 1, 2003, through the date they were conducted. No responsive records were located as a result of these searches.

*U.S. Consulate in Shanghai, China*

18

45.     An Information Management Specialist, an Acting Cultural Affairs Officer, and a Program Assistant, who were knowledgeable of both the FOIA request at issue and Consulate Shanghai's records systems, conducted searches of their unclassified email records, and shared drives of the Public Affairs Section, the Economic Section, the Political Section, and the Executive Office using the following search terms[7]:

- "Kean University"
- "Wenzhou-Kean"
- "Duke University"
- "Duke-Kunshan"
- "NYU-Shanghai"
- "New York University"
- "Hopkins-Nanjing"

No date restrictions were applied to the electronic or paper searches.  No responsive records were located as a result of these searches.

*U.S. Embassy in Seoul, South Korea*

46.     The Cultural Affairs Officer in the Public Affairs Section, who was knowledgeable of both the FOIA request at issue and Embassy Seoul's records systems, conducted searches of his unclassified email records and the Public Affairs Section's shared drive using the search terms "Songdo," "SUNY Korea," "George Mason Korea," or "Utah Asia." There was no date range restriction applied to the shared drive search. The e-mail search was limited to June 1, 2015, the date of the arrival of the Cultural Affairs Officer at Embassy Seoul,

---

[7] Consulate Shanghai's search terms were limited, as some of the universities pertinent to the Embassy in Beijing were not active in Shanghai's consular district.

19

through the date the search was conducted.  Paper records of the Public Affairs Section were not searched because these records would already be captured in the electronic search.  No responsive records were located as a result of these searches.

*U.S. Embassy in Singapore*

47.     An Information Management Officer, who was knowledgeable of both the FOIA request at issue and Embassy Singapore's records systems, conducted searches of the paper files, unclassified email records, and shared drives for the Public Affairs Section, Economic Section, Political Section, and Executive Office for documents responsive to the following combination of search terms   ("College" or "University") and ("Establish" or "Assistance" or "Agreement") and "Campus" and "Singapore."  No responsive records were located as a result of these searches.

**Bureau of East Asian and Pacific Affairs**

48.     The Bureau of East Asian and Pacific Affairs ("EAP") is charged with advising the Secretary of State on U.S. foreign policy and U.S. relations with the countries in the Asia-Pacific region.

49.     The Office of Korean Affairs ("EAP/K") manages U.S. foreign policy in relation to the Republic of Korea and the Democratic People's Republic of Korea.  The Deputy Director of the Office of Korea, who was knowledgeable of both the FOIA request at issue and EAP/K's records systems, conducted a search of the EAP/K network shared drive using the search term "University."  This search was limited to the date range of January 1, 2000, through the date on which the search was conducted.  EAP/K does not have any paper files for the time period of the request; all records are maintained electronically.  No responsive records were located as a result of this search.

20

50.    A Singapore Desk Officer in the Office of Maritime of Southeast Asia ("EAP/MTS"), who was knowledgeable of both the FOIA request at issue and EAP/MTS's records systems, conducted a search of her unclassified and classified email records and the EAP/MTS unclassified and classified shared drives using the search term "University."  The Desk Officer's email search was limited to the beginning of his employment in EAP/MTS, January 1, 2017, through the date on which the search was conducted.  The searches of the EAP/MTS's shared drives were limited to January 1, 2003, through the date on which the search was conducted.  No responsive records were located as a result of these searches.

**Bureau of Near Eastern Affairs**

51.    The United Arab Emirates Desk Officer in the Office of Arabian Peninsula Affairs ("NEA/ARP"), who was knowledgeable of both the FOIA request at issue and NEA/ARP's records systems, conducted searches of her unclassified and classified email records, NEA/ARP paper files, and the NEA/ARP shared drive using the search term combinations ("University" and "Abu Dhabi") or ("Campus" and "Abu Dhabi").  The search was limited to January 1, 2003, through the date on which the search was conducted.  No responsive records were located as a result of these searches.

**Bureaus and Offices not Reasonably Likely to Maintain Records Responsive to Requests**

52.    IPS undertook further efforts to locate records to request F-2015-03181 by contacting the offices and bureaus below.  Each of these offices and bureaus confirmed that they were not reasonably likely to maintain records responsive to this request because the topics of this request were not within the scope of their work.

- The Policy, Planning, and Resources Office of the Office of the Under Secretary for Public Diplomacy

- The Office of the Chief of Protocol

- The Bureau of Intelligence and Research

- The Office of Overseas Schools in the Bureau of Administration

- The Office of Language Services in the Bureau of Administration

- The White House Liaison's Office, which reports to the Office of the Undersecretary for Management

- The Bureau of Budget and Planning, which reports to the Office of the Undersecretary for Management.

- The Bureau of International Information Programs

- The Bureau of Educational and Cultural Affairs

- The Office of Policy Planning Staff in the Office of the Secretary

As a result, the Department did not conduct searches of these offices and bureaus for records responsive to request F-2015-03181.

## C. REQUEST F-2015-03575

### The Retired Records Inventory Management System

53.     An IPS Government Information Specialist with knowledge of the FOIA request and RIMS searched RIMS using the following terms:

- "MEPI"
- "Northwestern"
- "Medill"
- "Center of Journalism Excellence"
- "Independent Center of Journalists"

No responsive records were located as a result of these searches.

### Bureau of Near Eastern Affairs

54.    The Bureau of Near Eastern Affairs, Office of Assistance Coordination ("NEA/AC") was created in 2014 to coordinate and align U.S. assistance in the Middle East and North Africa with U.S. foreign policy priorities and regional economic, security, governance and stabilization needs.  NEA/AC also directly programs and oversees critical projects across the region.  The Middle Eastern Partnership Initiative ("MEPI") is housed in NEA/AC.  NEA/AC staff are also assigned to two regional MEPI offices based at US Embassies in Kuwait and Rabat to program and oversee $9 million in grants annually to local civil society organizations.

55.    Award documents from NEA/AC are stored on the NEA/AC shared drives and the Assistance Coordination Performance Reporting System ("ACPRS").

56.    A Grants Management Specialist in NEA/AC, who was knowledgeable of both the FOIA request at issue and NEA/AC's records systems, conducted searches of the relevant Program Officer's e-mail records, the NEA/AC network shared drive, and the ACPRS using the search terms "Northwestern," "Medill," or "Independent Center of Journalists."  The Grants Management Specialist also searched the terms "Center of Journalism Excellence," "Center," or "Journalism" in the NEA/AC network shared drive and in the ACPRS.  These searches were limited to January 1, 2003, through the date of the search.  As a result of these searches, NEA/AC located 33 responsive documents.

## II.    FOIA EXEMPTIONS CLAIMED

### FOIA Exemption 1 – Classified Information

57.    5 U.S.C. § 552(b)(1) states that the FOIA does not apply to matters that are:

> (A) specifically authorized under criteria established by Executive order ("E.O.") to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

58. Based upon my personal review of the documents and information furnished to me in the course of my official duties, including the sources of the information marked as classified, I have determined that the information withheld under Exemption 1, 5 U.S.C. § 552(b)(1), continues to meet the classification criteria of E.O. 13526. This includes information currently classified at the SECRET and CONFIDENTIAL levels. Section 1.2 of E.O. 13526 states:

> "Secret" shall be applied to information regarding intelligence sources and methods, potential military plans or operations, and foreign relations or foreign activities of the U.S. government, the release of which reasonably could be expected to cause exceptionally grave damage to the national security.

> "Confidential" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe.

59. Section 6.1(l) of E.O. 13526 defines "damage to the national security" as follows:

> "Damage to the national security" means harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information.

60. Information withheld in this case under Exemption 1 is properly classified pursuant to Sections 1.4(b) and 1.4(d) of E.O. 13526. Section 1.4 states:

> Information shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security in accordance with section 1.2 of this order, and it pertains to one or more of the following: . . .(b) foreign government information …(d) foreign relations or foreign activities of the United States, including confidential sources . . . .

61. For information to be properly classified and withheld from disclosure pursuant to Exemption 1, the information must meet all of the following requirements set forth in Section 1.1(a) of E.O. 13526:

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories listed in section 1.4 of [E.O. 13526]; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

62. In my role as an original classification authority, I have determined that the information withheld pursuant to Exemption 1 meets these criteria. It is under the control of the United States Government, falls within Sections 1.4(b) and (d) of E.O. 13526, and requires classification at the CONFIDENTIAL or SECRET level because its unauthorized disclosure reasonably could be expected to cause damage or exceptionally grave damage to national security.

63. Section 1.7(d) of E.O. 13526 contemplates that in certain situations decisions to classify or reclassify information may be made after the information has been requested under the FOIA. In January of 2016 in the course of processing records that were responsive to Request F-2015-03180, pursuant to the provisions of Section 1.7(d), the Department properly classified as SECRET or CONFIDENTIAL certain information in four documents that was originally UNCLASSIFIED  Additionally, in May of 2018, the Department properly classified as SECRET or CONFIDENTIAL, pursuant to Section 1.7(d), information in two documents that was previously classified but that had passed its declassification date.

25

64.     The Department's Senior Agency Official responsible for directing and administering the Department's information security program under Section 5.4(d) of Executive Order 13526 is the Under Secretary of State for Management.  See 22 C.F.R. § 9.3.  The Under Secretary for Management has delegated the authority for classifying or reclassifying information under Sections 1.7(d) to the DAS for GIS and to the Director of IPS.  Under standard procedures, all recommendations to classify information come to the DAS or IPS Director after review by subject matter experts and, when considered appropriate, also by officials in the offices in the Department with current responsibility for the subject of the information, in addition to other agency representatives as appropriate.  In reaching a decision whether to classify, the classifying official carefully scrutinizes the documents and the information at issue and then determines whether the information should be classified.

65.      In connection with my official duties in supervising the Department's responses to FOIA requests, I have been informed that in January of 2016 the previous DAS for GIS, Ms. Margaret Grafeld, personally reviewed the previously unclassified information in four documents and determined their current classification status, consistent with Section 1.1(a) of Executive Order 13526.

66.     I have apprised the Acting Under Secretary for Management, Ambassador William Todd, of Ms. Grafeld's decision to classify the aforementioned documents in accordance with E.O. 13526, Section 1.7(d).  I will also apprise Ambassador Todd of my decision in May of 2018 to classify information in two documents in accordance with E.O. 13526, Section 1.7(d).

**Section 1.4(b) Foreign Government Information**

26

67.     Section 6.1(s) of E.O. 13526 defines "foreign government information" to

include:

> (1) information provided to the United States Government by a
> foreign government or governments, an international organization of
> governments, or any element thereof, with the expectation that the
> information, the source of the information, or both, are to be held in
> confidence;
>
> (2) information produced by the United States Government pursuant
> to or as a result of a joint arrangement with a foreign government or
> governments, or an international organization of governments, or any
> element thereof, requiring that the information, the arrangement, or both,
> are to be held in confidence; or
>
> (3) information received and treated as "foreign government
> information" under the terms of a predecessor order.

68.     Section 1.1(d) of E.O. 13,526 states:

> The unauthorized disclosure of foreign government information is
> presumed to cause damage to the national security.

69.     The ability to obtain information from foreign governments is essential to the

formulation and successful implementation of U.S. foreign policy.  Release of foreign

government information provided in confidence, either voluntarily by the Department or by

order of a court, would cause foreign officials to believe that U.S. officials are not able or willing

to observe the confidentiality expected in such exchanges.  Governments could reasonably be

expected to be less willing in the future to furnish information important to the conduct of U.S.

foreign relations, and in general be less disposed to cooperate with the United States in the

achievement of foreign policy objectives of common interest.  Protecting foreign government

information, and in some cases even the fact that information has been provided, is critical to our

diplomatic relationships and the conduct of foreign relations.  As detailed in the attached *Vaughn*

Index, certain information withheld in this case is currently and properly classified pursuant to

Section 1.4(b) of E.O. 13526 and is therefore exempt from disclosure under Exemption 1, 5 U.S.C. § 552(b)(1).

### Section 1.4(d) - Foreign Relations or Foreign Activities of the United States

70.     Diplomatic exchanges are premised upon, and depend upon, an expectation of confidentiality.  Mutual trust between governments in this realm is vital to U.S. foreign relations. The inability of the United States to maintain confidentiality in its diplomatic exchanges would inevitably chill relations with other governments, and could reasonably be expected to damage U.S. national security by diminishing our access to vital sources of information.

71.     Some of the withheld information is classified under Section 1.4(d) of E.O. 13526. This information concerns both confidential sources and sensitive aspects of U.S. foreign relations.  Release of this classified information has the potential to inject friction into, or cause damage to, a number of our bilateral relationships with Middle Eastern countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States.  Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States.  As detailed in the attached *Vaughn* Index, certain information withheld in this case is currently and properly classified pursuant to Section 1.4(d) of E.O. 13526 and is therefore exempt from disclosure under Exemption 1, 5 U.S.C. § 552(b)(1).

### FOIA Exemption 4 – Business Information

72.     5 U.S.C. § 552(b)(4) states that the FOIA does not apply to matters that are:

28

trade secrets and commercial or financial information obtained from a person and privileged or confidential;

73.     This exemption is intended to protect the interests of both the government and submitters of information.  The exemption covers two broad categories of information in federal agency records: (1) trade secrets; and (2) information that is (a) commercial or financial, and (b) obtained from a person, and (c) privileged or confidential.  Its very existence encourages submitters to voluntarily furnish useful commercial or financial information to the government and it correspondingly provides the government with an assurance that such information will be reliable.  The exemption also affords protection to those submitters who are required to furnish commercial or financial information to the government by safeguarding them from the competitive disadvantages that could result from disclosure.

74.     The Department withheld commercial information that was voluntarily submitted by an individual to demonstrate the type of courses she could teach for an event held by the U.S. Embassy in Doha.  Due to the voluntary nature the submission, the Department found that this information is privileged and confidential within the meaning FOIA Exemption 4, 5 U.S.C. § 552(b)(4) because this information would  not customarily be disclosed to the public.  *See Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C. Cir. 1992).  The basses for the Department's withholdings are described further in the attached *Vaughn* Index.

**FOIA Exemption 5 – Litigation Privileges**

75.     5 U.S.C. § 552(b)(5) states that the FOIA does not apply to:

inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency....

29

76.     Exemption 5, 5 U.S.C. § 552(b)(5), protects from disclosure information that is normally privileged in the civil discovery context, including information that is protected by the deliberative process, attorney-client, and attorney work product privileges.  The deliberative process privilege protects the confidentiality of candid views and advice of U.S. Government officials in their internal deliberations related to policy formulation and administrative direction.

77.     The Department withheld information, as detailed in the attached *Vaughn* Index, on the basis of this exemption in a number of documents in this case pursuant to the deliberative process privilege.  For example, certain information withheld in response to Plaintiff's FOIA request consists of drafts of official Department communications such as cables and powerpoints that contain the author's recommendations regarding what text and information the documents should include.  Other withheld material contains internal Department discussions, recommendations, and opinions regarding potential agendas for organizations and individuals visiting Doha, Qatar.  This material includes Department employees' assessments and opinions regarding which individual and groups to include on these agendas.  The Department also withheld a briefing paper for a senior agency official that was drafted in order to inform and advise him on his approach to a meeting with a foreign counterpart.

78.     This material contains details of internal discussions held in the course of formulating a policy and agency action and is pre-decisional and deliberative.  Its disclosure could reasonably be expected to chill the open and frank exchange of comments and opinions that occurs between Department officials at these critical times.  In addition, disclosure of these details would severely hamper the ability of responsible Department officials to formulate and carry out executive branch programs.  The withheld information is, accordingly, exempt from release under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.

**FOIA Exemption 6**

79.    5 U.S.C. § 552(b)(6) states that the FOIA does not apply to:

> …personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy....

80.    The courts have interpreted the language of Exemption 6 broadly to encompass all information that applies to an individual without regard to whether it was located in a particular type of file.  The Department has withheld, among other pieces of information, the names, résumés, job applications, citizenship status, educational and work history, and e-mail addresses of private individuals.  The Department also withheld the personal family information of a Department employee.

81.    Inasmuch as the information the Department withheld under Exemption 6 is personal to an individual, a personal privacy interest exists in the information.  The Department is required to balance the privacy interests of individuals whose information appears in these records against any public interest in disclosure.  As the Supreme Court noted in *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 780 (1989), "as a categorical matter . . . a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy."  Thus that invasion of a private citizen's right to privacy is balanced with the extent to which the information in question would inform the general public about the U.S. Government's performance of its mission to enforce federal criminal and civil statutes, as well as administrative rules and federal regulations.  As explained further in the attached *Vaughn* Index, the Department determined that the individual privacy interest outweighed the public interest in the information withheld under FOIA Exemption 6.  Indeed, the Department determined that there is no public interest in such

31

information because release of the information would shed no light on the Department's operations and activities. In each instance, the privacy interests clearly outweigh any public interest in disclosure. Thus, release of this information would constitute a clearly unwarranted invasion of personal privacy, and the information is therefore exempt from release under FOIA Exemption 6, 5 U.S.C. § 552(b)(6).

## IV. CONCLUSION

82. In summary, the Department conducted a thorough search of all Department locations that were reasonably likely to contain records responsive to Plaintiff's FOIA Request. For Request F-2015-03180, the Department retrieved 421 responsive records. Of those records, 101 were released in full, 299 were released in part, and 20 were denied in full by the Department. Additionally, one document sent for direct reply to the Defense Intelligence Agency was denied in full. For Request F-2015-03575, the Department retrieved 33 responsive records. Of those records, 29 were released in full, 2 were released in part, and 2 were denied in full. No responsive records were located for Request F-2015-03181.

83. The Department has carefully reviewed all of the documents addressed herein for reasonable segregation of non-exempt information and has implemented segregation when possible. Otherwise, the Department determined that no segregation of meaningful information in the documents could be made without disclosing information warranting protection under the law.

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __24th__ day of May 2018, Washington, D.C.

Eric F. Stein

33

*Stevens v. U.S. Dep't of State, No. 17-cv-02494*[1]

**FOIA Request F-2015-03180**

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| **(1)** | | | | | | |
| C06339690 | Draft memo | 2 | 1/12/2017 | Department officials | Denied in Full ("DIF") | (b)(5), Deliberative Process Privilege ("DPP") |
| **DESCRIPTION**: This document is a draft action memo providing a recommendation to the Ambassador concerning a requested speaking engagement. The document contains redline edits. The Department withheld the document in full under Freedom of Information Act ("FOIA") Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Release of the withheld material, which is pre-decisional and deliberative with respect to a final determination on whether to pursue the particular option under consideration, would reveal the details of intra-agency discussions regarding a proposed course of action. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5, pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(2-3)** | | | | | | |
| C06340036 (attached to C06340035) C06340206 (attached to C06340205) | Employment Application | 7 | December 2015 | Individual | DIF | (b)(6) |

---

[1] This *Vaughn* Index describes withholdings that Plaintiff noted she is challenging. If a described withholding is not challenged by Plaintiff, that is also noted. The Department released the information under challenge in documents C06339759, C06339995, C06341506, C06341507, and C06341508. As a result, there are no withholdings pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, described for those documents in this *Vaughn* Index. Document C06339759 was previously denied in full to Plaintiff.

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| **DESCRIPTION**: These documents are duplicate applications for employment with the Department.  The Department withheld the documents in full under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), because disclosure of this information would reveal the applicant's personally identifiable information including, but not limited to, name, birthplace, address, Social Security number, phone numbers, and educational background.  Release of this information could subject the individual to identity theft, unwanted attention, or harassing or unsolicited communications.  In the absence of any indication that the applicant was selected, the Department determined that release of this information would not shed light on the operations of the U.S. Government.  As a result, release of this information would constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under FOIA Exemption 6.  The Department conducted a line-by-line review of the documents and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(4-6)** | | | | | | |
| C06340037 (attached to C06340035) C06340207 (attached to C06340205) C06343861 (attached to C06343861) | Resume | 2 | Undated | Individual | DIF | (b)(6) |
| **DESCRIPTION**: These documents are resumes submitted as part of applications for employment with the Department.  Documents C06340037 and C06340207 are duplicates of each other.  The Department withheld the documents in full under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), because disclosure of this information would reveal personally identifiable information including, but not limited to, the individuals' name, address, phone numbers and educational/professional background.  Release of this information could subject the individuals to identity theft, unwanted attention, or harassing or unsolicited communications.  In the absence of any indication that the applicants were selected the Department determined that release of this information would not shed light on the operations of the U.S. Government.  As a result, release of this information would constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under FOIA Exemption 6.  The Department conducted a line-by-line review of the documents and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(7)** | | | | | | |
| C06340047 (attached to C06340046) | Draft PowerPoint | 20 | April 2017 | Department Officials | DIF | (b)(5), DPP |
| **DESCRIPTION**: This document is a draft power point on U.S.-Qatar relations that was awaiting approval for use.  The Department withheld the document in full under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  Release of the withheld material, | | | | | | |

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| which is pre-decisional and deliberative with respect to a final determination on the contents of the presentation and U.S. policy toward Qatar, would reveal the author's preliminary ideas and recommendations regarding the presentation and would reveal details of internal Department discussions on how to prepare and pursue U.S. policy. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5, pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(8-10)** | | | | | | |
| C06340130 (attached to C06340129) C06340384 (attached to C06340383) C06343857 (attached to C06343855) | Draft Cable | 3 5 4 | Undated | Department Officials | DIF | (b)(5), DPP |
| **DESCRIPTION:** These documents are draft texts of cables reporting on the effects of film diplomacy in Qatar. The Department withheld the documents in full under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Release of the withheld material, which is pre-decisional and deliberative with respect to a final determination on the final text of the cables, would reveal the author's preliminary ideas regarding the cable and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Department officials are crafting text regarding substantive foreign policy issues for dissemination. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5, pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the documents and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(11)** | | | | | | |
| C06340769 (attached to C06340765) | Course Handouts | 65 | Undated | Alix Madigan/ Embassy Officials | DIF | (b)(4) |
| **DESCRIPTION:** This document is a handout for a film class conducted by Ms. Alix Madigan, a film producer, which includes business plans and other commercial documents related to film production. This class is normally taught for a fee and the associated material is not shared by Ms. | | | | | | |

3

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| Madigan beyond her students. The information was provided voluntarily to the Department by Ms. Madigan to demonstrate the types of courses that she could teach for an Embassy event. The withheld information is commercial in nature because it relates to the individual's paid profession, and is the type of information that individual does not customarily disclose to the public. For these reasons, the Department found that this information is privileged and confidential within the meaning of Exemption 4, 5 U.S.C. § 552(b)(4). The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(12-13)** | | | | | | |
| C06340770 (attached to C06340765) C06347365 (attached to C06347364) | Syllabus | 3 | Undated | Alix Madigan/ Embassy Officials | DIF | (b)(4) |
| **DESCRIPTION:** These documents are duplicate syllabi for a film class conducted by Ms. Alix Madigan that is normally taught for a fee and is not shared by Ms. Madigan beyond students in her classes. The information was provided voluntarily to the Department by Ms. Madigan to demonstrate the types of courses that she could teach for an Embassy event. The withheld information is commercial in nature because it relates to the individual's paid profession, and is also the type of information that the individual does not customarily disclose to the public. For these reasons, the Department found that this information is privileged and confidential within the meaning of Exemption 4, 5 U.S.C. § 552(b)(4). The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(14)** | | | | | | |
| C06347167 (attached to C06347166) | Draft Cable | 11 | Undated | Department Officials | DIF | (b)(5), DPP |
| **DESCRIPTION:** This document is a draft cable regarding the Qatari media environment. The Department withheld the document in full under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Release of the withheld material, which is pre-decisional and deliberative with respect to a final determination on the final text of the cable, would reveal the author's preliminary ideas regarding the cable and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Department officials are crafting text regarding substantive foreign policy issues for dissemination. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5, pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the | | | | | | |

4

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| documents and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(15-18)** | | | | | | |
| C06347177 (attached to C06347176) C06347179 (attached to C06347178) C06347182 (attached to C06347181) C06347184 (attached to C06347183) | Draft Report | 9 9 7 5 | Undated | Department Officials | DIF | (b)(5), DPP |
| **DESCRIPTION:** These documents are drafts outlining the content and language needed for an internal Department report, the Public Diplomacy Country Context for Doha, Qatar ("PDCC"), and proposed text for the PDCC. These documents contain redline edits and editing comments. The PDCC collects from U.S. Embassies and Consulates, otherwise known as posts, views of country-specific information related to public outreach and engagement including demographics and analysis. It is designed to give interested stakeholders an immediate understanding of the societal, political, economic, and cultural environments that exist within a country and of the key audiences a post is trying to reach. The Department withheld the documents in full under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Release of the withheld material, which is pre-decisional and deliberative with respect to a final determination on the text of the report, would reveal the authors' preliminary ideas regarding the report and details of intra-agency discussions on U.S. strategic planning. Release could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Department officials are developing a preferred course of action. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5, pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(19-25)** | | | | | | |
| C06347166 C06347171 C06347175 C06347176 | E-mail | 7 7 6 6 | May-July 2016 | Department Officials | Release in Part ("RIP") | (b)(5), DPP |

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| C06347178 | | 6 | | | | |
| C06347181 | | 5 | | | | |
| C06347183 | | 6 | | | | |

**DESCRIPTION:** These documents are intra-agency email exchanges with the subject line "RE: Relaunching the Public Diplomacy Country Context (PDCC)." The Department withheld the documents in part under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The withheld information consists of back and forth discussion and deliberation regarding the research and drafting of the text of the PDCC. Release of the withheld material, which is pre-decisional and deliberative with respect to a final determination on the researching, drafting and final content of the PDCC, could reasonably be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when Department officials are developing a preferred course of action content for Department principals. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future proposed courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined there is no meaningful, non-exempt information that can be reasonably segregated and released.

| (26) | | | | | | |
|---|---|---|---|---|---|---|
| C05829752 | Cable | 4 | 01/31/2013 | U.S. Embassy Doha/Department | DIF | (b)(1), 1.4 (d); (b)(6) |

**DESCRIPTION:** This document is a cable regarding the effects of education in Qatar. The document was originally and is currently classified as CONFIDENTIAL. The Department withheld this document in full under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 section 1.4(d), which pertains to foreign relations or foreign activities of the United States, including confidential sources. The Department withheld information in this document that concerns both confidential sources and sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in the Middle East. Confidentiality of this information is vital to the conduct of successful foreign relations. In particular, U.S. Government officials must be able to conduct candid conversations with foreign leaders and counterparts regarding sensitive national security topics without fear that those conversations will be made public. Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security. Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States.

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| The Department also withheld the name of an education official under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), because release of this information could subject the individual to harassment or unwanted attention because of his relationship with the U.S. government regarding the topics discussed in the cable. This information would not shed light on the operations of the U.S. Government. As a result, release of this information would constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under FOIA Exemption 6. As a result, release of this information would constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under FOIA Exemption 6. The Department conducted a line-by-line review of the document and determined there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| (27) | | | | | | |
| C05829760 | Cable | 3 | 01/17/2007 | U.S. Embassy Doha/Department | DIF | (b)(1), 1.4(b), (d); (b)(6) |
| DESCRIPTION: This document is a cable reporting on discussions between the U.S. Ambassador to Qatar and a Qatari Government official. The document was originally and is currently classified as CONFIDENTIAL. The original declassification date for this document was January 17, 2017. On May 9, 2018, in accordance with the requirements of Section 1.7(d) of E.O. 13526, the Department classified this document as CONFIDENTIAL. The Department withheld this document in full under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(b) and (d), which pertain to foreign government information and foreign relations or foreign activities of the United States, including confidential sources. The ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy. Release of the foreign government information in this document, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. Governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest. The Department also withheld information in this document that concerns both confidential sources and sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in the Middle East. Confidentiality of this information is vital to the conduct of successful foreign relations. In particular, U.S. Government officials must be able to conduct candid conversations with foreign leaders regarding sensitive national security topics without fear that those conversations will be made public. Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States. Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States. | | | | | | |

7

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| The Department also withheld personal information regarding an individual under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), because release of this information would reveal personal details concerning that individual's life and would not shed light on the operations of the U.S. Government. As a result, release of this information would constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under FOIA Exemption 6. The Department conducted a line-by-line review of the document and determined there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(28)** | | | | | | |
| C05829767[2] | Cable | 5 | | U.S. Embassy Doha/Department | RIP | (b)(1), 1.4(b), (d); b(5) DPP |
| **DESCRIPTION**: This document is a cable regarding an upcoming visit to Qatar by the Assistant Secretary for Near Eastern Affairs. The document was originally and is currently classified as SECRET. On November 3, 2015, the Department extended classification on this document at the SECRET level. The Department withheld this document in full under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(b) and (d), which pertain to foreign government information and foreign relations or foreign activities of the United States. The ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy. Release of the foreign government information in this document, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. Governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest. The Department also withheld information in this document that concern sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in the Middle East. Confidentiality of this information is vital to the conduct of successful foreign relations. In particular, U.S. Government officials must be able to conduct candid conversations with foreign leaders regarding sensitive national security topics without fear that those conversations will be made public. Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States. Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States. | | | | | | |

---

[2] This document was previously denied in full to Plaintiff.

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| The Department also withheld portions of this document under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The withheld material, which contains recommendations from Department employees to the Assistant Secretary regarding his visit to Qatar, is pre-decisional and deliberative with respect to a final determination on what policies to pursue during the Assistant Secretary's visit and would reveal the details of internal Department discussions on how to prepare and pursue U.S. policy. Release of this information could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Department officials are developing a preferred course of action and would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5, pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| (29) | | | | | | |
| C05829754 | Cable | 5 | 3/3/2014 | U.S. Embassy Doha/Department | RIP | (b)(1), 1.4(d); b(5) DPP |
| **DESCRIPTION**: This document is a cable with the subject line "Scenesetter for Commerce Secretary Pritzker's Visit to Qatar." Portions of the document were originally and are currently classified SECRET. The Department withheld this document in part under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 section 1.4(d), which pertains to foreign relations or foreign activities of the United States. The withheld information concerns sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving the political climate and foreign policy in Qatar. Confidentiality of this information is vital to the conduct of successful foreign relations. In particular, U.S. Government officials must be able to provide policymakers with candid assessments of the various nations or leaders with which the United States conducts foreign relations without fear that those internal assessments will be made public. Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States. Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States.

The Department also withheld portions of this document under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Release of the withheld material, which contains recommendations from Department employees to the Commerce Secretary regarding his visit to Qatar is pre-decisional and deliberative with respect to a final determination on what policies to pursue during the Secretary's visit to Qatar and would reveal the details of internal Department discussions on how to prepare and pursue U.S. policy. Release of | | | | | | |

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| this information could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Department officials are developing a preferred course of action and disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5, pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(30)** | | | | | | |
| C05829756 | Cable | 5 | 5/8/2013 | U.S. Embassy Doha/Department Officials | RIP | (b)(1), 1.4(d) |
| **DESCRIPTION**: This document is a cable with the subject line "Qatar: Healthy Debate on Restricted Media in Honor of World Press Freedom Day." Portions of the document were originally and are currently classified as CONFIDENTIAL. On January 8, 2016, in accordance with the requirements of Section 1.7(d) of E.O. 13526, the Department classified portions of the document as CONFIDENTIAL that had been UNCLASSIFIED. The Department withheld this document in part under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 section 1.4(d), which pertains to foreign relations or foreign activities of the United States, including confidential sources. The withheld information concerns both confidential sources and sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in Qatar. This material reflects information about the nature of U.S. engagement with other countries and evaluations by U.S. officials regarding those engagements. Confidentiality of this information is vital to the conduct of successful foreign relations. In particular, U.S. Government officials must be able to provide policymakers with candid assessments of the various nations or leaders with which the United States conducts foreign relations without fear that those internal assessments will be made public. Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, our bilateral relationship with Qatar whose cooperation is important to U.S. national security with the United States. Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States. The Department conducted a line-by-line review of the document and determined there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(31)** | | | | | | |
| C05829757 | Cable | 5 | 11/19/2014 | U.S. Embassy Doha/Department | RIP | (b)(1), 1.4(b), (d) |
| **DESCRIPTION**: This document is a cable with the subject line "Scenesetter for Senator Barrasso's November Visit to Qatar." On January 8, 2016, with the requirements of Section 1.7(d) of E.O. 13526, the Department classified portions of the document as CONFIDENTIAL that had been | | | | | | |

10

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| UNCLASSIFIED. The Department withheld this document in part under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(b) and (d), which pertain to foreign government information and foreign relations or foreign activities of the United States, including confidential sources. The ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy. Release of the foreign government information in this document, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. Governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest. The Department also withheld information in this document that concerns both confidential sources and sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in Qatar and the Middle East in general. Confidentiality of this information is vital to the conduct of successful foreign relations. In particular, U.S. Government officials must be able to provide policymakers with candid assessments of the various nations or leaders with which the United States conducts foreign relations without fear that those internal assessments will be made public. Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States. Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States. The Department conducted a line-by-line review of the document and determined there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| (32) | | | | | | |
| C05829758 | Cable | 4 | 6/26/2014 | U.S. Embassy Doha/Department | RIP | (b)(1), 1.4(b), (d) |
| **DESCRIPTION**: This document is a cable with the subject line "Qatar: Scenesetter for June 27-28 Visit of Senator Graham." On January 8, 2016, in accordance with the requirements of Section 1.7(d) of E.O. 13526, the Department classified portions of the document as CONFIDENTIAL that had been UNCLASSIFIED. The Department withheld this document in part under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(b) and (d), which pertain to foreign government information and foreign relations or foreign activities of the United States. The ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy. Release of the foreign government information in this document, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. Governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in | | | | | | |

11

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest.  The Department also withheld information in this document that concerns both confidential sources and sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in the Middle East.  Confidentiality of this information is vital to the conduct of successful foreign relations.  In particular, U.S. Government officials must be able to provide policymakers with candid assessments of the various nations or leaders with which the United States conducts foreign relations without fear that those internal assessments will be made public.  Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States.  Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States.  The Department conducted a line-by-line review of the document and determined there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(33)** | | | | | | |
| C05829759 | Cable | 4 | 12/13/2013 | U.S. Embassy Doha/Department | RIP | (b)(1), 1.4(d) |
| **DESCRIPTION**:  This document is a cable with the subject line "Qatar: Ousted Media Freedom Advocate Questions Qatari Commitment to Reform."  The document was originally and is currently classified as CONFIDENTIAL.  The Department withheld this document in part under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 section 1.4(d), which pertains to foreign relations or foreign activities of the United States, including confidential sources.  The Department withheld information in this document that concerns both confidential sources and sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in Qatar. Confidentiality of this information is vital to the conduct of successful foreign relations.  In particular, U.S. Government officials must be able to conduct candid conversations with foreign counterparts regarding sensitive national security topics without fear that those conversations will be made public.  Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States.  Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States.  The Department conducted a line-by-line review of the document and determined there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(34)** | | | | | | |
| C05829768 | Cable | 7 | 1/08/2008 | U.S. Embassy | RIP | (b)(1), 1.4 (b), (d); |

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| | | | | Doha/Department | | b(5) DPP |

**DESCRIPTION**:  This document is a cable with the subject line "Scenesetter for Secretary Bodman's January 21-22 Visit to Qatar."  Portions of the document were originally and are currently classified as SECRET.  On January 8, 2016, in accordance with the requirements of Section 1.7(d) of E.O. 13526, the Department classified portions of the document as SECRET that had been unclassified.  Additionally, on May 9, 2018, in accordance with the requirements of Section 1.7(d) of E.O. 13526, the Department classified portions of the document as SECRET that had been previously classified but had past their declassification date.  The Department withheld this document in part under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(b) and (d), which pertain to foreign government information and foreign relations or foreign activities of the United States.  The ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy.  Release of the foreign government information in this document, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges.  Governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest.  The Department also withheld information in this document that concerns sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in Qatar and the Middle East.  This material reflects information about the nature of U.S. engagement with other countries and evaluations by U.S. officials regarding those engagements.  Confidentiality of this information is vital to the conduct of successful foreign relations.  In particular, U.S. Government officials must be able to provide policymakers with candid assessments of the various nations or leaders with which the United States conducts foreign relations without fear that those internal assessments will be made public.  Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States.  Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States.

The Department also withheld portions of this document under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The withheld material, which contains recommendations from Department employees to the Secretary regarding his visit to Qatar is pre-decisional and deliberative with respect to a final determination on what policies to pursue during the Secretary's visit to Qatar and would reveal the details of internal Department discussions on how to prepare and pursue U.S. policy.  Release of this information could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Department officials are developing a preferred course of action and disclosure of this information would impede the ability of responsible executive branch

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5, pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(35)** | | | | | | |
| C05829770 | Cable | 6 | 5/19/2008 | U.S. Embassy Doha/Department | RIP | (b)(1), 1.4(b), (d) |
| **DESCRIPTION**: This document is a cable with the subject line "Scenesetter for DHS Secretary Michael Chertoff's May 2008 Visit to Qatar." Portions of the document were originally and are currently classified as SECRET. On November 3, 2015, the Department extended classification on this document at the SECRET level. The Department withheld this document in part under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(b) and (d), which pertain to foreign government information and foreign relations or foreign activities of the United States. The ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy. Release of the foreign government information in this document, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. Governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest. The Department also withheld information in this document that concerns sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in Qatar. This material reflects information about the nature of U.S. engagement with other countries and evaluations by U.S. officials regarding those engagements. Confidentiality of this information is vital to the conduct of successful foreign relations. In particular, U.S. Government officials must be able to provide policymakers with candid assessments of the various nations or leaders with which the United States conducts foreign relations without fear that those internal assessments will be made public. Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States. Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States. The Department conducted a line-by-line review of the document and determined there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(36)** | | | | | | |
| C05829772 | Cable | 3 | 05/16/2008 | Department/U.S. Embassy | RIP | (b)(1), 1.4(d) |

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| | | | | Doha | | |

**DESCRIPTION**: This document is a cable with the subject line "Democracy Strategy and Goals: Qatar." Portions of the document were originally and are currently classified as CONFIDENTIAL. On November 3, 2015, the Department extended classification on portions of the document at the CONFIDENTIAL level. The Department withheld this document in part under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 section 1.4(d), which pertains to foreign relations or foreign activities of the United States. The withheld information concerns sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in Qatar. This material reflects information about the nature of U.S. engagement with other countries and evaluations by U.S. officials regarding those engagements. Confidentiality of this information is vital to the conduct of successful foreign relations. In particular, U.S. Government officials must be able to provide policymakers with candid assessments of the various nations or leaders with which the United States conducts foreign relations without fear that those internal assessments will be made public. Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States. Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States. The Department conducted a line-by-line review of the document and determined there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

| (37) | | | | | | |
|---|---|---|---|---|---|---|
| C05899057 | Cable | 5 | 08/21/2008 | U.S. Embassy DOHA/Dep't of State | RIP | (b)(1), 1.4 (b), (d) |

**DESCRIPTION**: This document is a cable with the subject line "Scenesetter for U/S Glassman's Visit to Doha." Portions of the document were originally and are currently classified as CONFIDENTIAL. The Department withheld this document in part under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(b) and (d), which pertain to foreign government information and foreign relations or foreign activities of the United States. The ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy. Release of the foreign government information in this document, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. Governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest. The Department also withheld information in this document concerning sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in Qatar and other countries in the Middle East. This material reflects

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| information about the nature of U.S. engagement with other countries and evaluations by U.S. officials regarding those engagements. Confidentiality of this information is vital to the conduct of successful foreign relations.  In particular, U.S. Government officials must be able to provide policymakers with candid assessments of the various nations or leaders with which the United States conducts foreign relations without fear that those internal assessments will be made public.  Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States.  Moreover, the risk of harm to national security from disclosure of this information is exacerbated by the political and security instability in the region in question, such that release of this information could pose a direct threat to the national security of the United States.  The Department conducted a line-by-line review of the document and determined there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |

| (38) | | | | | | |
|---|---|---|---|---|---|---|
| C06340023 | Email | 4 | 9/9/2015 | Department Officials | RIP | (b)(5), DPP |
| **DESCRIPTION**: This document is an intra-agency email with the subject line "Ambassador Dana Shell Smith on US-Qatar relations."  The Department withheld this document in part under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The withheld information consists of proposed talking points for addressing the press on the issue of U.S.-Qatar bilateral relationship.  Release of the withheld material, which is pre-decisional and deliberative with respect to the Department's communications to the press, would reveal recommendations regarding the content of communications with the press, and could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Department officials are developing a preferred course of action.  Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding interactions with the press.  For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege.  The Department conducted a line-by-line review of the document and determined there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |

| (39) | | | | | | |
|---|---|---|---|---|---|---|
| C06340030 | Email | 1 | 11/22/2015 | Department Officials | RIP | (b)(5), DPP; (b)(6) |
| **DESCRIPTION**: This document is an intra-agency email with the subject line "Aspen Institute MFA Mtg times."  The Department withheld this document in part under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  Release of the withheld material, which is pre-decisional and deliberative with respect to the potential agenda for a visit by the Aspen Institute, would reveal the author's preliminary thoughts and ideas regarding the proposed agenda and could reasonably be expected to have a chilling effect on the open and frank | | | | | | |

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| expression of ideas, recommendations, and opinions that occurs when Department officials are developing a preferred course of action. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege. <br><br> The Department also withheld the mobile phone number of an agency official under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), because release of this information could subject the individual to harassing or unwanted communications and would not shed light on the operations of the U.S. Government. As a result, release of this information would constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under FOIA Exemption 6. Plaintiff is not challenging the Department's withholding pursuant to FOIA Exemption 6. The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. ||||||| 
| **(40)** |||||||
| C06340124 | Memo | 6 | 3/28/2017 | Department Officials | RIP | (b)(5), DPP |
| **DESCRIPTION**: This document is an action memo for the Ambassador to Qatar with the subject line "Ambassador Attendance and Speaking Engagement at Graduation Ceremonies." The Department withheld this document in part under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The withheld material contains recommendations for the Ambassador's and additional individuals' attendance and engagement at educational and graduation ceremonies. Release of this material could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Department officials are developing a preferred course of action. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined there is no additional meaningful, non-exempt information that can be reasonably segregated and released. |||||||
| **(41)** |||||||
| C06340311 | Spreadsheet | 4 | Undated | Unknown | RIP | (b)(6) |
| **DESCRIPTION**: This document is a spreadsheet containing data on students and administrators. The Department withheld this document in part under FOIA Exemption 6, 5 U.S.C. § 552(b)(6). The Department withheld personally identifiable information including university administrators and students' nicknames, citizenship, email addresses, most recent employer, job title, and undergraduate school because release of this information would reveal personal details concerning the individuals' lives and could subject the individuals to harassing communications or |||||||

17

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| unwanted attention. This information would not shed light on the operations of the U.S. Government. As a result, release of this information would constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under FOIA Exemption 6. The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(42)** | | | | | | |
| C06340423 | Email | 6 | 10/5/2015 | Department Officials | RIP | (b)(5), DPP |
| **DESCRIPTION:** This document is an intra-agency email with the subject line "PAS Paragraph for AmCham Publication." The Department withheld this document in part under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The withheld information consisting of draft proposed language for publication in a U.S. Chamber of Commerce booklet on doing business in Qatar. Release of the withheld material, which is pre-decisional and deliberative with respect to final approved language, would reveal the author's preliminary thoughts and ideas regarding proposed text and could reasonably be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when U.S. Government officials are crafting text for dissemination to the public. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding a preferred course of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(43)** | | | | | | |
| C06340790 | Email | 11 | 9/10/2015 | Department Officials/Qatar Academy faculty | RIP | (b)(6) |
| **DESCRIPTION**: This document is an email with the subject line "RE: Ambassador's Smith Presentation at Qatar Leadership Conference, Oct. 2015." The Department withheld this document in part under FOIA Exemption 6, 5 U.S.C. § 552(b)(6). The Department withheld personally identifying information including the email address and phone numbers of the Head of THIMUN Qatar and the e-mail address of a member of the Qatar Academy faculty. It also withheld personal family information, and sensitive, personal details regarding the Qatar Academy faculty member's work experience at the Department. Finally, the Department withheld information regarding Ambassador Smith's family. Release of this information could subject the individuals to harassment or unwanted attention and would reveal personal details regarding their lives. As a result, release of this information would constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under FOIA Exemption 6. The Department conducted a line-by-line review of the document and determined that there is no additional | | | | | | |

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| (44-45) | | | | | | |
| C06341605<br>C06341607 | Email | 4<br>4 | 1/6/2016<br>1/6/2016 | Department Officials | RIP | (b)(5), DPP |
| DESCRIPTION: These documents are intra-agency emails with the subject line "RE: Heading your way." The withheld material contains internal Embassy recommendations and suggestions regarding a proposed itinerary for a visiting Department official, including Department employee's assessments and opinions regarding the value of meeting with certain individuals and organizations in Qatar. The Department withheld the documents in part under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Release of the withheld material, which is pre-decisional and deliberative with respect to an official's plans during an upcoming visit, could reasonably be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when Department officials are developing a preferred course of action regarding engagement with foreign counterparts. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| (46) | | | | | | |
| C06341697 | Email | 3 | 1/6/2016 | Department Officials | RIP | (b)(5), DPP; (b)(6) |
| DESCRIPTION: This document is an intra-agency email with the subject line "RE: National Day Invitation List." The Department withheld this document in part under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The withheld material contains internal Embassy recommendations, suggestions, and opinions regarding a proposed invitation list for the National Day event at the U.S. Embassy in Qatar. Release of the withheld material, which is pre-decisional and deliberative with respect to plans on who to invite to National Day, could reasonably be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when Department officials are developing a preferred course of action. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege.<br><br>The Department also withheld the names and contact information of proposed invitees under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), because | | | | | | |

19

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| release of this information could subject the individual to harassing or unwanted communications and would not shed light on the operations of the U.S. Government.  As a result, release of this information would constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under FOIA Exemption 6.  The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.   Plaintiff is not challenging the Department's withholding pursuant to FOIA Exemption 6. | | | | | | |
| **(47)** | | | | | | |
| C06342814 | Email | 3 | 12/7/2015 | Department Officials | RIP | (b)(5), DPP, (b)(6) |
| **DESCRIPTION:**  This document is an intra-agency email with the subject line "RE: Qatar national day plans."  The Department withheld this document in part under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The withheld material contains a recommended script for use by the Ambassador in a Qatari national day video and questions and discussions between the Ambassador and embassy staff regarding what may be included in the final script.  Release of the withheld material, which is pre-decisional and deliberative with respect to the final script, could reasonably be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when Department officials are developing a preferred course of action.  Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action.  For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege.<br><br>The Department also withheld the mobile phone number of a Department official under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), because release of this information could subject the individual to harassing or unwanted communications and would not shed light on the operations of the U.S. Government.  As a result, release of this information would constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under FOIA Exemption 6.  Plaintiff is not challenging the Department's withholding pursuant to FOIA Exemption 6.  The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(48)** | | | | | | |
| C06343759 | Email | 5 | 09/21/2015 | Department Officials | RIP | (b)(5), DPP; b(6) |
| **DESCRIPTION**:  This document is an intra-agency email with the subject line "Visit of Media Specialist – Magda Abu Fadil."  The Department withheld this document in part under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The withheld material contains preliminary discussion, recommendations, and opinions regarding the proposed agenda for a media specialist's visit to Qatar. Release of the withheld material, which is pre-decisional and deliberative with respect to the final agenda for the upcoming visit, could | | | | | | |

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|

reasonably be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when Department officials are developing a preferred course of action. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding future courses of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege.

The Department also withheld the mobile phone number of a Department official and the mobile phone number and email address of a private individual under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), because release of this information could subject the individuals to harassing or unwanted communications and would not shed light on the operations of the U.S. Government. As a result, release of this information would constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under FOIA Exemption 6. Plaintiff is not challenging the Department's withholding pursuant to FOIA Exemption 6. The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| (49) | | | | | | |
|---|---|---|---|---|---|---|
| C06347128 | Paper | 5 | June 2017 | Embassy Officials/ Undersecretary for Diplomacy and Public Affairs | RIP | (b)(5), DPP |

**DESCRIPTION**: This document is a briefing paper entitled "R's Meeting with Ambassador Sheikh Mishal bin Hamad Al Thani." The Department withheld this document in part under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The withheld information represents a selection of facts chosen by Embassy staff for the purpose of advising the Undersecretary for Public Diplomacy and Public Affairs regarding the meeting and contains the authors' opinions and assessments regarding the U.S. relationship with Qatar and educational issue. Release of the withheld material, which is pre-decisional and deliberative with regards to the Undersecretary's approach to the meeting, could reasonably be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when Department officials are developing a preferred course of action. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding a proposed course of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

21

| Doc. No. | Doc Type | Pages | Date/Date Range | Author(s)/Recipient(s) | Review Result | State FOIA Exemptions Claimed |
|---|---|---|---|---|---|---|
| **(50)** | | | | | | |
| C06334236 | Draft Paper | 9 | Unknown | Middle Eastern Partnership Initiative ("MEPI") | DIF | (b)(5), DPP |
| **DESCRIPTION**: This document is a draft of program requirements for a project funded by MEPI. It contains redline text. Release of the withheld material, which is pre-decisional and deliberative with respect to final approved language, would reveal the author's preliminary thoughts and ideas regarding proposed text and could reasonably be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when U.S. Government officials are crafting text for dissemination to the public. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding a preferred course of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(51)** | | | | | | |
| C06334238 | Draft Paper | 2 | 2008 | MEPI | DIF | (b)(5), DPP |
| **DESCRIPTION**: This document is a draft description of the MEPI High School Journalism Education Program containing a comment about what to include in the description. Release of the withheld material, which is pre-decisional and deliberative with respect to final approved language, would reveal the author's preliminary thoughts and ideas regarding proposed text and could reasonably be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when U.S. Government officials are crafting text for dissemination to the public. Disclosure of this information would impede the ability of responsible executive branch officials to formulate and carry out programs by inhibiting candid discussion and the expression of recommendations and judgments regarding a preferred course of action. For these reasons, the withheld information is exempt from disclosure under FOIA Exemption 5 pursuant to the deliberative process privilege. The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| | | | | | | |

F - 2015- 03180

Brothers, Karen G                                         XREF. F -2015-00663

| | |
|---|---|
| From: | State Department FOIA <noreply@state.gov> |
| Sent: | Wednesday, February 11, 2015 8:01 PM |
| To: | FOIA Request |
| Subject: | FOIA Request Letter |

Thank you for filing your FOIA request online on 2/11/2015. Here is a review of your request.

The records I request can be described as follows:

Your agency recently unlawfully ruled a prior and perfectly legal request "invalid." (F-2015-00663) I am therefore breaking the request into components. Failure to produce responsive records absent a specific legal reason under the Freedom of Information Act will prompt litigation. Please note that by resubmitting this request I am not waiving my right to litigate the constructive denial of my prior request within the 60 days allowed under FOIA. Northwestern University has coordinated with officials from the U.S. State Department since the mid-2000s to open a campus in Doha, Qatar. My request is for: All State HQ and consular Qatar materials in all systems records and elsewhere referencing Northwestern University's Qatar campus. Material requested includes but is not limited to memorandums, cables or email, notes, reports, correspondence with other agencies, members of Congress (or staff), and private firms or individuals. Please consult in particular the following components: Policy Planning Staff, Bureau of International Information Programs, Policy Planning and Resources, Bureau of Budget and Planning, Bureau of Administration, Bureau of Diplomatic Security, Office of Management Policy, Rightsizing, and Innovation, Office of White House Liason, Bureau of Intelligence and Research, and Office of the Chief of Protocol, as well as all other components that may contain responsive information, including J5, or the Policy Division.

The time period of my request is from 01/01/2005 to present

I am affiliated with an educational or noncommercial scientific institution seeking information for a scholarly or scientific purpose and not for commercial use.
Additional documentation will be required.

I am willing to pay $25 for my request.

I request a waiver of all fees for this request.
Reason: I am affiliated with an educational or noncommercial scientific institution seeking information for a scholarly or scientific purpose and not for commercial use. For purposes of verification, please consult the information on the Northwestern University Political Science Department web page referencing my affiliation and research. http://redirect.state.sbu/?url=http://www.polisci.northwestern.edu/people/core-faculty/jacqueline-stevens.html

My additional comments are as follows:

N/A

Contact Information
Ms. Jacqueline Stevens
601 University Pl

STEIN DECLARATION
Civil Action No. 17-cv-02494
EXHIBIT 02

Political Science Department
Evanston, Illinois 10011
P: 847-467-2093
F: N/A
jacqueline-stevens@northwestern.edu

6



United States Department of State

*Washington, D.C. 20520*

FEB 12 2015

Dear Requester,

RE: ~~State HQ & Consular material referencing~~
~~Northwestern University's Qatar campus~~

This is in response to your request dated ~~February 11th~~. We have assigned Case Control Number ~~F-2015-03180~~ and will begin the processing of your request based upon the information provided in your communication.

The cut-off date is the date the search is initiated unless you have provided a specific timeframe.

We have considered your request for a fee waiver. Based upon the information provided in your letter, your request for a fee waiver has been denied. If you wish to appeal this decision, you may write to the Requester Liaison Division, at the address given on the bottom of this page. Your appeal should address the points listed in the enclosed sheet titled "Fee Waiver Information Sheet." Your appeal must be sent to us within 30 days from the date that you receive this letter.

Unusual circumstances (including the number and location of Department components involved in responding to your request, the volume of requested records, etc.) may arise that would require additional time to process your request.

We will notify you as soon as responsive material has been retrieved and reviewed.

Should you have any questions, you may call our FOIA Requester Service Center at (202) 261-8484 or send an email to FOIAstatus@state.gov. Please refer to the Case Control Number in any communication.

Sincerely,

Requester Communications Branch
Office of Information Programs & Services

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

STEIN DECLARATION
Civil Action No. 17-cv-02494
EXHIBIT 03

## Fee Waiver Information Sheet

It is the Department's policy to treat each request for a fee waiver on a case-by-case basis. Please provide the following information:

1. State why you believe the subject matter of your request concerns the operations or activities of the Federal Government.

2. Expand on your ability and intent to disseminate the information requested. E.g., have you published or disseminated information in this or related fields in the past? Is the information requested to be used in a specific article or paper currently being prepared? Are the documents going to be posted on a website? If so, please explain.

3. Describe any commercial interest which would be furthered by the disclosure of the requested information, e.g., will you be paid for the publication or dissemination of the requested information? If so, how much will you be paid and in what manner will you receive payment? Will you receive any other type of commercial benefit due to your dissemination of the requested information? A "commercial interest" is one that furthers a commercial, trade, or profit interest as those terms are commonly understood.

4. If your request for a fee waiver is not granted, we need your written assurance that you are willing to pay the fees associated with the processing of your request. You may set a limit on the amount you are willing to pay.

Please send this information to: Office of Information Programs and Services, A/GIS/IPS/RL, Room 8100, Department of State, 515 22nd Street, N.W., Washington, D.C. 20522-8100. Please refer to your request number in your correspondence to us.

**Fees:** The Freedom of Information Act (FOIA) provides that agencies may assess fees to recover the direct costs of processing requests, unless a fee waiver has been granted.

According to our regulations, by making a FOIA request, you have agreed to pay all applicable fees up to $25 unless a fee waiver has been granted. You may specify a willingness to pay a greater amount. If the estimated fees exceed this limit, you will be notified. **Please do not send payment in advance. If there are fees incurred in the processing of your request, you will be notified of the amount owed in separate correspondence.**

____✓____ You have stated your willingness to pay the fees incurred in the processing of this request up to $ __25.00__ .

_____ Please let us know if you are willing to pay the fees that will be incurred in the processing of your request. You may set a limit of the maximum amount that you wish to pay. Please be advised that, without an agreement to pay fees, your request will be processed without cost up to the required first 2 hours of search time (for all other requester category only) and duplication of the first 100 pages (for all other, media, educational and non-commercial scientific requester categories).

Based upon the information that you have provided, we have placed you in the requester category checked below. This request will be processed in accordance with the fee schedule designated for that category (see 22 C.F.R. 171, enclosed).

_____ **Commercial Use Requesters** – Charges may be assessed that recover the full direct costs of searching for, reviewing for release, and duplicating the record(s) sought.

_____ **Educational Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

_____ **Non-commercial Scientific Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

_____ **Representatives of the News Media** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

____✓____ **All Other Requesters** – Charges may be assessed that recover the full reasonable direct cost of searching for and duplicating the record(s) sought, after the first 100 pages of duplication, and the first two hours of search time.

____✓____ You have indicated your inclusion in a category different than the one indicated above. Please forward the information requested on the enclosed sheet titled "Requester Categories" to substantiate your inclusion in a particular category of requester.

We will notify you of the costs incurred in processing your request as soon as the search for, and review of, any responsive documents have been completed.

## <u>REQUESTER CATEGORIES</u>

**If you believe that you should NOT be considered a <u>commercial use requester</u>, please provide:**

Evidence that your use of the requested information will NOT further any commercial, trade, or profit interest of yourself or the person(s) on whose behalf the request is made.

**If you believe that you should be considered an <u>educational or non-commercial scientific institution</u> requester, please provide:**

A statement signed by the chairperson of your department, which indicates that your request is authorized by and under the auspices of a specific institution <u>and</u> that the requested records are not sought for a commercial use and are not intended to promote any particular product or industry, but is sought in furtherance of scholarly or scientific research.

**If you believe that you should be considered a <u>representative of the news media</u>, please provide:**

Evidence that you are employed by an entity that is organized and operated to publish or broadcast news to the public.

Evidence, if you are associated with a periodical publication such as a newsletter, that your product is available for purchase or subscription by the general public.

Evidence, if you are a freelance journalist, of the likelihood of publication through the news media (e.g., a publication contract, examples of past publications, etc.).

Evidence that the information you request is about current events or would be of current interest to the public.



**United States Department of State**

*Washington, D.C. 20520*

Case No. F-2015-03180
Segment:   EAN 1 & EAN 2

Ms. Jacqueline Stevens                                **MAR 2 3 2016**
Northwestern University - Political Science Department
601 University Place, Second Floor
Evanston, IL 60208

Dear Ms. Stevens:

In response to your request dated February 11, 2015 under the Freedom of
Information Act (Title 5 USC Section 552), we have initiated searches of the
following Department of State record systems: the Central Foreign Policy
Records (the principal record system of the Department of State), the Bureaus of
Policy and Planning, International Information Programs, Budget and Planning,
Administration, Diplomatic Security, Intelligence and Research, The Office of
the Undersecretary for Management, and The Office of Chief Protocol.

Based on the responses and guidance provided by the bureaus and further
consultations with subject matter experts it was determined that additional
searches of the Bureaus of Education and Cultural Affairs, Near Eastern Affairs
and The Office of the Comptroller & Global Financial Services were needed.

Please be advised that our search of the records of the Bureaus of Policy &
Planning, Budget and Planning, Education & Cultural Affairs, The Office of the
Under Secretary for Management and The Office of the Comptroller & Global
Financial Services did not yield any documents responsive to your request.

The search of the Central Foreign Policy Records has been completed and has
resulted in the retrieval of 25 documents responsive to your request. After
reviewing these documents, we have determined that eight may be released in
full, 12 may be released with excisions, and three must be withheld in full. All
released material is enclosed.

- 2 -

A decision on the two remaining documents requires intra-agency or interagency coordination: both originated in another government office, which will review the documents and respond to you directly.

An enclosure explains Freedom of Information Act exemptions and other grounds for withholding material. Where we have made excisions, the applicable exemptions are marked on each document. Of the documents withheld in full, three were withheld under exemption B1 and two under exemption B6.

In some cases, two or more exemptions may apply to the same document. All non-exempt material that is reasonably segregable from the exempt material has been released.

You have the right to appeal our determination by writing, within 60 days, to the Chairman, Appeals Review Panel, c/o Appeals Officer, A/GIS/IPS/PP/LA, U.S. Department of State, SA-2, Room 8100, Washington, D.C. 20522-8100. The appeal letter should refer to the case number shown above, clearly identify the decision being appealed, and provide supporting arguments when possible. For further information, see the Code of Federal Regulations, 22 CFR 171.52.

We will keep you informed as your case progresses. If you have any questions, you may write to the Office of Information Programs and Services, SA-2, Department of State, Washington, DC 20522-8100, or telephone us at (202) 261-8484. Please be sure to refer to the case number shown above in all correspondence about this case.

Sincerely,

Eric F. Stein
Co-Director, Acting
Office of Information Programs and Services

Enclosures:
    As stated.



United States Department of State

*Washington, D.C. 20520*

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Evanston, Illinois 10011

JUN 2016
1 3

RE: Freedom of Information Act (FOIA) Case No. F-2015-03180

Dear Ms. Stevens:

Reference is made to your February 11, 2015, Freedom of Information Act request to the Department of State regarding Northwestern University's Qatar campus. The Office of Information Programs and Services has referred one document, ten pages, to the Bureau of Diplomatic Security (DS) for review and direct reply to you.

The document is being released to you in its entirety. Please note, Northwestern University is only mentioned once on page six.

If you have any questions regarding a particular aspect of this case, you should contact the Office of Information Programs and Services, (A/GIS/IPS), Department of State, SA-2, Washington, DC 20522-8100. In any communication, please refer to the case number.

Sincerely,

Michael D. Caramelo, Chief
DS/MGT/FOIA-PA
Freedom of Information Act and
Privacy Act Division
Bureau of Diplomatic Security

Enclosure(s):
        Document

STEIN DECLARATION
Civil Action No. 17-cv-02494
EXHIBIT 05



**United States Department of State**

*Washington, D.C. 20520*

June 9, 2017

Case No.: F-2015-03180
Segments: Doha-0001, EAN-0003

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated March 23, 2016, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. The Department has reviewed five additional documents responsive to your request and determined that one may be released in full, two may be released in part, and two must be withheld in full. All released material is enclosed. The review of potentially responsive documents for your request remains ongoing.

An enclosure explains the FOIA exemptions and other grounds for withholding material. Where we have made excisions, the applicable exemptions are marked on each document. All non-exempt material that is reasonably segregable from the exempt material has been released. The Department withheld the one document in full under FOIA Exemptions 5, 5 U.S.C. §§ 552(b)(5).

If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03180, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated



**United States Department of State**

*Washington, D.C. 20520*

July 7th, 2017

Case No.: F-2015-03180
Segments: Doha-0002

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated June 9th, 2017, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. The Department has reviewed 116 additional documents responsive to your request and determined that 23 may be released in full, 90 may be released in part, and 3 must be withheld in full. All released material is enclosed. The review of potentially responsive documents for your request remains ongoing.

An enclosure explains the FOIA exemptions and other grounds for withholding material. Where we have made excisions, the applicable exemptions are marked on each document. All non-exempt material that is reasonably segregable from the exempt material has been released. The Department withheld 3 documents in full under FOIA Exemptions 5 and 6, 5 U.S.C. §§ 552(b)(5) and (b)(6).

If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03180, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated



**United States Department of State**

*Washington, D.C.  20520*

August 7th, 2017

Case No.:  F-2015-03180
Segment:  Doha-0003

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated July 7, 2017, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552.  The Department has reviewed 61 additional documents responsive to your request and determined that 17 may be released in full, 42 may be released in part, and 2 must be withheld in full.  All released material is enclosed.  The review of potentially responsive documents for your request remains ongoing.

An enclosure explains the FOIA exemptions and other grounds for withholding material.  Where we have made excisions, the applicable exemptions are marked on each document.  All non-exempt material that is reasonably segregable from the exempt material has been released.  The Department withheld the two documents in full under FOIA Exemption 6, 5 U.S.C. § 552(b)(6).

If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390.  Please refer to the case number, F-2015-03180, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Susan C. Weetman for

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated



**United States Department of State**

*Washington, D.C.  20520*

September 6, 2017

Case No.:  F-2015-03180
Segment:  Doha-0004

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated August 7, 2017, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552.  The Department has reviewed 66 additional documents responsive to your request and determined that 27 may be released in full, 38 may be released in part, and 1 must be withheld in full.  All released material is enclosed.  The review of potentially responsive documents for your request remains ongoing.

An enclosure explains the FOIA exemptions and other grounds for withholding material.  Where we have made excisions, the applicable exemptions are marked on each document.  All non-exempt material that is reasonably segregable from the exempt material has been released.  The Department withheld the one document in full under FOIA Exemption 5, 5 U.S.C. § 552(b)(5).

If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390.  Please refer to the case number, F-2015-03180, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated



**United States Department of State**

*Washington, D.C. 20520*

October 5, 2017

Case No.: F-2015-03180
Segment: Doha-0004C1

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated September 6, 2017, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. The Department's review of records responsive to your request remains ongoing and has located two additional documents. The Department has determined that one may be released in full and one may be released in part. An enclosure explains the FOIA exemptions and other grounds for withholding material. Where we have made excisions, the applicable exemptions are marked on each document. All non-exempt material that is reasonably segregable from the exempt material has been released. All released material is enclosed.

We will keep you informed as your case progresses. If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03180, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

*Susan C. Weetman for*

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated



**United States Department of State**

*Washington, D.C.  20520*

November 6, 2017

Case No.:  F-2015-03180
Segment:  Doha-0005IC1,
Doha-0005IC1IC2, Doha-
0006IC1

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated October 5, 2017, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552.  The Department's review of records responsive to your request remains ongoing and has located 22 additional documents.  The Department has determined that 1 may be released in full and 21 may be released in part.  An enclosure explains the FOIA exemptions and other grounds for withholding material.  Where we have made excisions, the applicable exemptions are marked on each document.  All non-exempt material that is reasonably segregable from the exempt material has been released.  All released material is enclosed.

We will keep you informed as your case progresses.  If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03180, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Susal C. Weemar Ar

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated



**United States Department of State**

*Washington, D.C. 20520*

December 5, 2017

Case No.: F-2015-03180
Segment: Doha-0004C2,
Doha-0004IC2, Doha-
0005IC1IC1, Doha-0006IC1,
Doha-0007IC1, Doha-
0008IC1, Doha-0009IC1,
Doha-0009IC2, Doha-
0010IC1, Doha-013IC1,
Doha-015IC1

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated November 6, 2017, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. The Department's review of records responsive to your request is ongoing and has located 62 additional documents. The Department has determined that 12 may be released in full, 48 may be released in part, and 2 must be withheld in full.

An enclosure explains the FOIA exemptions and other grounds for withholding material. Where we have made excisions, the applicable exemptions are marked on each document. All non-exempt material that is reasonably segregable from the exempt material has been released. All released material is enclosed. The Department withheld the two documents in full under FOIA Exemption 4, 5 U.S.C. § 552(b)(4).

We will keep you informed as your case progresses. If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03180, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

*Susan C. Weetman For*

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated



**United States Department of State**

*Washington, D.C. 20520*

January 4, 2018

Case No.: F-2015-03180
Segment: Doha-0008IC1,
Doha-0011IC1, Doha-
0012IC1, Doha-0014IC1

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated December 6, 2017, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. The Department's processing of records responsive to your request is ongoing and has located 45 additional documents. The Department has determined that 10 may be released in full, 30 may be released in part, and 5 must be withheld in full.

An enclosure explains the FOIA exemptions and other grounds for withholding material. Where we have made excisions, the applicable exemptions are marked on each document. All non-exempt material that is reasonably segregable from the exempt material has been released. All released material is enclosed. The Department withheld the five documents in full under FOIA Exemption 5, 5 U.S.C. § 552(b)(5).

We will keep you informed as your case progresses. If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03180, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated

**United States Department of State**

*Washington, D.C. 20520*

February 5, 2018

Case No.: F-2015-03180
Segment: Doha-0016IC1

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated January 4, 2018, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. The Department's processing of records responsive to your request has located 19 additional documents. After reviewing these documents, we have determined that 2 may be released in full, 15 may be released in part, and 2 must be withheld in full.

An enclosure explains the FOIA exemptions and other grounds for withholding material. Where we have made excisions, the applicable exemptions are marked on each document. All non-exempt material that is reasonably segregable from the exempt material has been released. All released material is enclosed. The Department withheld the two documents in full under FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (b)(6).

If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03180, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated

**United States Department of State**

*Washington, D.C. 20520*

May 17, 2018

Case No.: F-2015-03180
Segment: Doha-0002, Doha-002IC1

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated February 5, 2018, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. Upon further review, the Department has determined that additional information may be released in seven documents previously released in part, and in two documents previously denied in full. One of these documents, C05829767, has been marked to reflect an additional basis for withholding information.

The Department is also enclosing two documents previously released to you in part, with amended markings that reflect our basis for withholding information in those documents. One of those documents, C05829768, includes a stamp indicating an additional classification action.

Finally, the Department located two additional documents responsive to your request. Upon review, we have determined that one may be released in full, and one must be denied in full. For the documents withheld in full we have cited FOIA Exemption 5, 5 U.S.C. §552 (b)(5). An enclosure explains the FOIA exemptions and other grounds for withholding material. Where we have made excisions, the applicable exemptions are marked on each document. All non-exempt material that is reasonably segregable from the exempt material has been released. All released material is enclosed.

If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03180, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Eric F. Stein, Director
Office of Information Programs and Services

Enclosures: As stated

**Brothers, Karen G**

| | |
|---|---|
| **From:** | State Department FOIA <noreply@state.gov> |
| **Sent:** | Wednesday, February 11, 2015 8:16 PM |
| **To:** | FOIA Request |
| **Subject:** | FOIA Request Letter |

Thank you for filing your FOIA request online on 2/11/2015. Here is a review of your request.

The records I request can be described as follows:

Documents publicly available indicate that the State Department has coordinated with U.S. universities and the Qatar Foundation to establish campuses in "Education City," Qatar. I am requesting all *policy and planning materials* pertaining to *establishing U.S. university campuses in foreign countries, including but not limited to Qatar, Abu Dhabi, and Singapore. This includes but is not limited to memorandums, cables or email, notes, reports, correspondence with other agencies, members of Congress (or staff), and private firms or individuals. Please consult in particular the following components: Policy Planning Staff, Bureau of International Information Programs, Policy Planning and Resources, Bureau of Budget and Planning, Bureau of Administration, Bureau of Diplomatic Security, Office of Management Policy, Rightsizing, and Innovation, Office of White House Liason, Bureau of Intelligence and Research, and Office of the Chief of Protocol, as well as all other components that may contain responsive information.

The time period of my request is from 01/01/2003 to present

I am affiliated with an educational or noncommercial scientific institution seeking information for a scholarly or scientific purpose and not for commercial use.
Additional documentation will be required.


I am willing to pay $25 for my request.

I request a waiver of all fees for this request.
Reason: I am affiliated with an educational or noncommercial scientific institution seeking information for a scholarly or scientific purpose and not for commercial use. For purposes of verification, please consult the information on the Northwestern University Political Science Department web page referencing my affiliation and research. http://redirect.state.sbu/?url=http://www.polisci.northwestern.edu/people/core-faculty/jacqueline-stevens.html Please note that this reference satisfies the request for "additional documentation."

My additional comments are as follows:

N/A

Contact Information
Ms. Jacqueline Stevens
601 University Place
Political Science Department
Evanson, Illinois 60208
P: 847-467-2093

STEIN DECLARATION
Civil Action No. 17-cv-02494
EXHIBIT 16

F: N/A
jacqueline-stevens@northwestern.edu

4



United States Department of State

*Washington, D.C. 20520*

FEB 1 2 2015

Dear Requester,

RE: <u>Documents regarding State Department's coordination with U.S.
Universities & the Qatar Foundation to establish campuses in</u>
This is in response to your request dated <u>February 11th</u>. We have assigned Case <u>Education City</u>
Control Number <u>F-2015-03181</u> and will begin the processing of your Qatar
request based upon the information provided in your communication.

The cut-off date is the date the search is initiated unless you have provided a specific
timeframe.

We have considered your request for a fee waiver. Based upon the information provided
in your letter, your request for a fee waiver has been denied. If you wish to appeal this
decision, you may write to the Requester Liaison Division, at the address given on the
bottom of this page. Your appeal should address the points listed in the enclosed sheet
titled "Fee Waiver Information Sheet." Your appeal must be sent to us within 30 days
from the date that you receive this letter.

Unusual circumstances (including the number and location of Department components
involved in responding to your request, the volume of requested records, etc.) may arise
that would require additional time to process your request.

We will notify you as soon as responsive material has been retrieved and reviewed.

Should you have any questions, you may call our FOIA Requester Service Center at
(202) 261-8484 or send an email to FOIAstatus@state.gov. Please refer to the Case
Control Number in any communication.

Sincerely,

Requester Communications Branch
Office of Information Programs & Services

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

STEIN DECLARATION
Civil Action No. 17-cv-02494
EXHIBIT 17

## <u>Fee Waiver Information Sheet</u>

It is the Department's policy to treat each request for a fee waiver on a case-by-case basis. Please provide the following information:

1. State why you believe the subject matter of your request concerns the operations or activities of the Federal Government.

2. Expand on your ability and intent to disseminate the information requested. E.g., have you published or disseminated information in this or related fields in the past? Is the information requested to be used in a specific article or paper currently being prepared? Are the documents going to be posted on a website? If so, please explain.

3. Describe any commercial interest which would be furthered by the disclosure of the requested information, e.g., will you be paid for the publication or dissemination of the requested information? If so, how much will you be paid and in what manner will you receive payment? Will you receive any other type of commercial benefit due to your dissemination of the requested information? A "commercial interest" is one that furthers a commercial, trade, or profit interest as those terms are commonly understood.

4. If your request for a fee waiver is not granted, we need your written assurance that you are willing to pay the fees associated with the processing of your request. You may set a limit on the amount you are willing to pay.

Please send this information to: Office of Information Programs and Services, A/GIS/IPS/RL, Room 8100, Department of State, 515 22nd Street, N.W., Washington, D.C. 20522-8100. Please refer to your request number in your correspondence to us.

STEIN DECLARATION
Civil Action No. 17-cv-02494
EXHIBIT 17

**Fees:** The Freedom of Information Act (FOIA) provides that agencies may assess fees to recover the direct costs of processing requests, unless a fee waiver has been granted.

According to our regulations, by making a FOIA request, you have agreed to pay all applicable fees up to $25 unless a fee waiver has been granted. You may specify a willingness to pay a greater amount. If the estimated fees exceed this limit, you will be notified. **Please do not send payment in advance. If there are fees incurred in the processing of your request, you will be notified of the amount owed in separate correspondence.**

__X__ You have stated your willingness to pay the fees incurred in the processing of this request up to $ _1500_ .

____ Please let us know if you are willing to pay the fees that will be incurred in the processing of your request. You may set a limit of the maximum amount that you wish to pay. Please be advised that, without an agreement to pay fees, your request will be processed without cost up to the required first 2 hours of search time (for all other requester category only) and duplication of the first 100 pages (for all other, media, educational and non-commercial scientific requester categories).

Based upon the information that you have provided, we have placed you in the requester category checked below. This request will be processed in accordance with the fee schedule designated for that category (see 22 C.F.R. 171, enclosed).

____ **Commercial Use Requesters** – Charges may be assessed that recover the full direct costs of searching for, reviewing for release, and duplicating the record(s) sought.

____ **Educational Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

____ **Non-commercial Scientific Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

____ **Representatives of the News Media** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

_✓_ **All Other Requesters** – Charges may be assessed that recover the full reasonable direct cost of searching for and duplicating the record(s) sought, after the first 100 pages of duplication, and the first two hours of search time.

_✓_ You have indicated your inclusion in a category different than the one indicated above. Please forward the information requested on the enclosed sheet titled "Requester Categories" to substantiate your inclusion in a particular category of requester.

We will notify you of the costs incurred in processing your request as soon as the search for, and review of, any responsive documents have been completed.

## REQUESTER CATEGORIES

**If you believe that you should NOT be considered a <u>commercial use requester</u>, please provide:**

> Evidence that your use of the requested information will NOT further any commercial, trade, or profit interest of yourself or the person(s) on whose behalf the request is made.

**If you believe that you should be considered an <u>educational or non-commercial scientific institution</u> requester, please provide:**

> A statement signed by the chairperson of your department, which indicates that your request is authorized by and under the auspices of a specific institution <u>and</u> that the requested records are not sought for a commercial use and are not intended to promote any particular product or industry, but is sought in furtherance of scholarly or scientific research.

**If you believe that you should be considered a <u>representative of the news media</u>, please provide:**

> Evidence that you are employed by an entity that is organized and operated to publish or broadcast news to the public.

> Evidence, if you are associated with a periodical publication such as a newsletter, that your product is available for purchase or subscription by the general public.

> Evidence, if you are a freelance journalist, of the likelihood of publication through the news media (e.g., a publication contract, examples of past publications, etc.).

> Evidence that the information you request is about current events or would be of current interest to the public.



**United States Department of State**

*Washington, D.C. 20520*

December 5, 2017

Case No. F-2015-03181

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

In response to your request dated February 11, 2015, under the Freedom of Information Act, 5 U.S.C. § 552, the Department of State has completed its search and found no responsive records. This completes the processing of your request.

If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03181, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

*Susan C Weetman for*

Eric F. Stein, Director
Office of Information Programs and Services

F - 2015 - 03575

**Brothers, Karen G**

| | |
|---|---|
| **From:** | State Department FOIA <noreply@state.gov> |
| **Sent:** | Wednesday, February 18, 2015 11:14 AM |
| **To:** | FOIA Request |
| **Subject:** | FOIA Request Letter |

Thank you for filing your FOIA request online on 2/18/2015. Here is a review of your request.

The records I request can be described as follows:

1) All contracts, memoranda, reports, notes, and email and any other material in any medium produced, received or maintained by either USAID and its components or the Middle East Partnership Initiative and its components from January 1, 2004 to present concerning U.S. government funds transferred to the Independent Center of Journalists. 2) All contracts, memoranda, reports, notes, and email and any other material in any medium produced, received or maintained by either USAID and its components or the Middle East Partnership Initiative and its components from January 1, 2004 to present concerning Northwestern University and its components, including but not limited to the Medill School of Journalism and Qatar. 3) All contracts, memoranda, reports, notes, and email and any other material in any medium produced, received or maintained by either USAID and its components or the Middle East Partnership Initiative and its components from January 1, 2004 to present concerning Center(s) of Journalism Excellence.

The time period of my request is from 01/01/2004 to present

I am affiliated with an educational or noncommercial scientific institution seeking information for a scholarly or scientific purpose and not for commercial use.
Additional documentation will be required.

I am willing to pay $25 for my request.

I request a waiver of all fees for this request.
Reason: Please note verification of my afifliation and research publications here:
http://redirect.state.sbu/?url=http://www.polisci.northwestern.edu/people/core-faculty/jacqueline-stevens.html

My additional comments are as follows:

Your FOIA office staff have in the past produced responses inconsistent with the FOIA law. Please note that any form letter that does not provide specific reasons for doing anything other than the expeditious processing of my request as required by the FOIA statute is unlawful and will be addressed appropriately.

Contact Information
Ms. Jacqueline Stevens
601 University Place
Political Science Department
Evanston, Illinois 60208
P: 847-467-2093
F: N/A
jacqueline-stevens@northwestern.edu

1



United States Department of State

*Washington, D.C. 20520*

FEB 2 6 2015

Dear Requester,

RE: *Records regarding USAID, on the (merit) and its components. US government funds transferred to the independent center center for Jewish life, etc.*

This is in response to your request dated ___2-18-15___. We have assigned Case Control Number ___F2015-03575___ and will begin the processing of your request based upon the information provided in your communication.

The cut-off date is the date the search is initiated unless you have provided a specific timeframe.

We have considered your request for a fee waiver. Based upon the information provided in your letter, your request for a fee waiver has been denied. If you wish to appeal this decision, you may write to the Requester Liaison Division, at the address given on the bottom of this page. Your appeal should address the points listed in the enclosed sheet titled "Fee Waiver Information Sheet." Your appeal must be sent to us within 30 days from the date that you receive this letter.

Unusual circumstances (including the number and location of Department components involved in responding to your request, the volume of requested records, etc.) may arise that would require additional time to process your request.

We will notify you as soon as responsive material has been retrieved and reviewed.

Should you have any questions, you may call our FOIA Requester Service Center at (202) 261-8484 or send an email to FOIAstatus@state.gov. Please refer to the Case Control Number in any communication.

Sincerely,

Requester Communications Branch
Office of Information Programs & Services

---

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

STEIN DECLARATION
Civil Action No. 17-cv-02494
EXHIBIT 20

### Fee Waiver Information Sheet

It is the Department's policy to treat each request for a fee waiver on a case-by-case basis. Please provide the following information:

1. State why you believe the subject matter of your request concerns the operations or activities of the Federal Government.

2. Expand on your ability and intent to disseminate the information requested. E.g., have you published or disseminated information in this or related fields in the past? Is the information requested to be used in a specific article or paper currently being prepared? Are the documents going to be posted on a website? If so, please explain.

3. Describe any commercial interest which would be furthered by the disclosure of the requested information, e.g., will you be paid for the publication or dissemination of the requested information? If so, how much will you be paid and in what manner will you receive payment? Will you receive any other type of commercial benefit due to your dissemination of the requested information? A "commercial interest" is one that furthers a commercial, trade, or profit interest as those terms are commonly understood.

4. If your request for a fee waiver is not granted, we need your written assurance that you are willing to pay the fees associated with the processing of your request. You may set a limit on the amount you are willing to pay.

Please send this information to: Office of Information Programs and Services, A/GIS/IPS/RL, Room 8100, Department of State, 515 22nd Street, N.W., Washington, D.C. 20522-8100. Please refer to your request number in your correspondence to us.

**Fees:** The Freedom of Information Act (FOIA) provides that agencies may assess fees to recover the direct costs of processing requests, unless a fee waiver has been granted.

According to our regulations, by making a FOIA request, you have agreed to pay all applicable fees up to $25 unless a fee waiver has been granted. You may specify a willingness to pay a greater amount. If the estimated fees exceed this limit, you will be notified. **Please do not send payment in advance. If there are fees incurred in the processing of your request, you will be notified of the amount owed in separate correspondence.**

__✓__ You have stated your willingness to pay the fees incurred in the processing of this request up to $ _25.00_ .

____ Please let us know if you are willing to pay the fees that will be incurred in the processing of your request. You may set a limit of the maximum amount that you wish to pay. Please be advised that, without an agreement to pay fees, your request will be processed without cost up to the required first 2 hours of search time (for all other requester category only) and duplication of the first 100 pages (for all other, media, educational and non-commercial scientific requester categories).

Based upon the information that you have provided, we have placed you in the requester category checked below. This request will be processed in accordance with the fee schedule designated for that category (see 22 C.F.R. 171, enclosed).

____ **Commercial Use Requesters** – Charges may be assessed that recover the full direct costs of searching for, reviewing for release, and duplicating the record(s) sought.

____ **Educational Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

____ **Non-commercial Scientific Institution Requesters** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

____ **Representatives of the News Media** – Charges may be assessed that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

__X__ **All Other Requesters** – Charges may be assessed that recover the full reasonable direct cost of searching for and duplicating the record(s) sought, after the first 100 pages of duplication, and the first two hours of search time.

__X__ You have indicated your inclusion in a category different than the one indicated above. Please forward the information requested on the enclosed sheet titled "Requester Categories" to substantiate your inclusion in a particular category of requester.

We will notify you of the costs incurred in processing your request as soon as the search for, and review of, any responsive documents have been completed.

STEIN DECLARATION
Civil Action No. 17-cv-02494
EXHIBIT 20

## REQUESTER CATEGORIES

If you believe that you should NOT be considered a <u>commercial use requester</u>, please provide:

> Evidence that your use of the requested information will NOT further any commercial, trade, or profit interest of yourself or the person(s) on whose behalf the request is made.

If you believe that you should be considered an <u>educational or non-commercial scientific institution</u> requester, please provide:

> A statement, signed by the chairperson of your department, which indicates that your request is authorized by and under the auspices of a specific institution <u>and</u> that the requested records are not sought for a commercial use and are not intended to promote any particular product or industry, but are sought in furtherance of scholarly or scientific research.

If you believe that you should be considered a <u>representative of the news media</u>, please provide:

> Evidence that you are employed by an entity that is organized and operated to publish or broadcast news to the public.

> Evidence, if you are associated with a periodical publication such as a newsletter, that your product is available for purchase or subscription by the general public.

> Evidence, if you are a freelance journalist, of the likelihood of publication through the news media (e.g., a publication contract, examples of past publications, etc.).

> Evidence that the information you request is about current events or would be of current interest to the public.

Some or all of the records you seek appear to have been originated by another agency. If you wish to contact the Freedom of Information Act/Privacy Act Office of that agency, the address and contact information follows:

**United States Agency for International Development**
S. Lankford, FOIA Team Leader
Information & Records Division
Office of Administrative Services
Room 2.07C, RRB
Washington, D.C. 20523-2701

Fax: (202) 216-3070
foia@usaid.gov



**United States Department of State**

*Washington, D.C. 20520*

June 9, 2017

Case No.: F-2015-03575
Segments: NEA-0001L,
EAN-0001

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to your letter dated February 18, 2015, seeking the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. The Department has reviewed two documents responsive to your request and determined that both documents must be withheld in full. The review of potentially responsive documents for your request remains ongoing.

An enclosure explains the FOIA exemptions and other grounds for withholding material. The Department withheld the two documents in full under FOIA Exemptions 5, 5 U.S.C. §§ 552(b)(5).

If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03575, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated



**United States Department of State**

*Washington, D.C. 20520*

July 7, 2017

Case No.: F-2015-03575
Segments: NEA-0001LIC1

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated June 9th, 2017, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. The Department has reviewed 21 documents responsive to your request and determined that 20 may be released in full and 1 may be released in part. All released material is enclosed. The review of potentially responsive documents for your request remains ongoing.

An enclosure explains the FOIA exemptions and other grounds for withholding material. Where we have made excisions, the applicable exemptions are marked on each document. All non-exempt material that is reasonably segregable from the exempt material has been released.

If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03575, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated

**United States Department of State**

*Washington, D.C. 20520*

January 4, 2018

Case No.: F-2015-03575
Segments: NEA-0001L

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated July 7th, 2017, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. The Department has reviewed nine documents responsive to your request and determined that eight may be released in full and one may be released in part. All released material is enclosed.

An enclosure explains the FOIA exemptions and other grounds for withholding material. Where we have made excisions, the applicable exemptions are marked on each document. All non-exempt material that is reasonably segregable from the exempt material has been released and is enclosed.

This completes the processing of your request. If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03575, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated



**United States Department of State**

*Washington, D.C. 20520*

May 17, 2018

Case No.: F-2015-03575
Segment: NEA/AC-0001

Ms. Jacqueline Stevens
601 University Place
Political Science Department
Northwestern University
Evanston, IL 60208

Dear Ms. Stevens:

I refer to our letter dated February 5, 2018, regarding the release of certain Department of State material under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552. The Department located one additional document responsive to the above-referenced request, which we have determined may be released in full. The released material is enclosed.

If you have any questions, you may contact Assistant United States Attorney Alex Hartzler at Alex.Hartzler@usdoj.gov or (312) 886-1390. Please refer to the case number, F-2015-03180, and the civil action number, 1:17-cv-02494, in all correspondence about this case.

Sincerely,

Eric F. Stein, Director
Office of Information Programs and Services

Enclosure: As stated

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CV 2494 |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF ALESIA Y. WILLIAMS

I, Alesia Williams, do hereby declare the following to be true and correct:

1.     I am the Chief of the Freedom of Information Act and Declassification Services

Office (FOIA Office) for the Defense Intelligence Agency (DIA), which is part of the

Department of Defense (DoD). I have served as the Chief of the FOIA Office since June 2014. I

previously served as the Chief, FOIA Services Section (an element within the DIA FOIA

Office), from January 2008 to June 2014. Prior to that I was an administrative officer processing

FOIA requests at DIA from November 2006 to December 2007, and I was a contractor assigned

to DIA as a FOIA Senior Document Reviewer from January to November 2006. Prior to coming

to DIA, throughout my career in the United States Air Force ("USAF"), one of my duties was to

process FOIA requests. I also spent over five years supervising two USAF FOIA offices.

2.     As Chief of the FOIA Office, I have been designated by the DIA Director as a

declassification authority pursuant to Executive Order 13526 § 3.1. This authority extends to all

*Stevens v. Dept. of State, No. 17-2494 (N.D.Ill.)*
*Alesia Y. Williams Declaration*

information that is classified by, originated by, or that is otherwise under the declassification purview of DIA. I have also been designated by the Director as the Initial Denial Authority for responses to FOIA requests. My administrative duties include the management of day-to-day operations of DIA's FOIA program. The FOIA Office receives, processes, and responds to requests for DIA records under the FOIA and the Privacy Act. At my direction, DIA personnel are tasked to search Agency records systems under their control to identify documents and other information which may be responsive to individual requests. They forward any potentially responsive records that are located to my office, which in turn determines whether responsive records should be withheld in whole or in part under any applicable statutory FOIA or Privacy Act exemptions. The activities of my staff are governed by the "DOD Freedom of Information Act Program Regulation," found at 32 C.F.R. Part 286, as supplemented by the "Defense Intelligence Agency (DIA) Freedom of Information Act" regulation, found at 32 C.F.R. Part 292.

3.      In the course of my official duties at DIA, I have become personally familiar with the referral submitted to DIA in relation to this litigation. The statements made herein are based upon my personal knowledge, upon information made available to me in my official capacity, and upon determinations made by me in accordance therewith.

4.      By letter dated March 23, 2016, the Department of State (DoS) referred to DIA one record in its possession with DIA equities and requested DIA review the applicable information for releasability and direct response to the requester. DIA responded to the DoS' referral via letter to Jacqueline Stevens dated June 28, 2017. In its response, DIA noted that the record must be withheld in full pursuant to 5 U.S.C. §§ 552(b)(1) and (b)(3) of the FOIA, and Executive Order (E.O.) 13,526.

*Stevens v. Dept. of State, No. 17-2494 (N.D.Ill.)*
*Alesia Y. Williams Declaration*

<u>FOIA EXEMPTIONS CLAIMED BY DIA</u>

<u>Portions Withheld Under 5 U.S.C. § 552 (b)(1)</u>

5.      The current basis for classification of national security information is found in

E.O. 13,526.  Section 1.1 of E.O. 13,526 authorizes an Original Classification Authority (OCA)

to classify information owned, produced, or controlled by the United States government if it falls

within one of the following eight classification categories specified in Section 1.4 of E.O.

13,526:

      (a) military plans, weapons systems, or operations;

      (b) foreign government information;

      (c) intelligence activities (including special activities), intelligence sources or methods, or cryptology;

      (d) foreign relations or foreign activities of the United States, including confidential sources;

      (e) scientific, technological, or economic matters relating to the national security;

      (f) United States government programs for safeguarding nuclear materials or facilities;

      (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to national security; or

      (h) the development, production, or use of weapons of mass destruction.

6.     Section 1.2 of E.O. 13,526 provides that information covered by one or more of these classification categories may be classified at one of three classification levels - Top Secret (TS), Secret (S) or Confidential (C) - depending on the degree of harm that would result from the unauthorized disclosure of such information.  Information is classified at the Confidential level if unauthorized disclosure could reasonably be expected to cause damage to national security. Information is classified at the Secret level if its release could reasonably be expected to cause serious damage to the national security.  Classification at the Top Secret level is maintained if its release could reasonably be expected to cause grave damage to national security.

7.     Exercising the declassification authority delegated to me by the Director of DIA and pursuant to E.O. 13,526, I have determined that certain information within the referred record remains currently and properly classified at the SECRET or CONFIDENTIAL levels under E.O. 13,526 and that it is appropriately withheld under FOIA Exemption 1.  This determination is within my authority as a declassification review official and is further supported by the opinions of the subject matter experts with knowledge of the national security topics covered.

### 1.4(c) -- Intelligence Sources and Methods

8.     DIA withheld certain information under Exemption (b)(1) because it relates to intelligence sources and methods, its disclosure could reasonably be expected to cause either serious or exceptionally grave damage to national security, and it is thus properly classified as Confidential or Secret under Section 1.4(c) of E.O. 13,526.  Section 1.4(c) recognizes that the disclosure of intelligence sources can cause damage to the national security.  Intelligence sources can include individuals, foreign or American, foreign entities, and the intelligence and security

services of foreign governments. Willing intelligence sources can be expected to furnish information only when confident that they are protected from retribution by the absolute secrecy surrounding their relationship to the United States government. Sources that are compromised become extremely vulnerable to retaliation from a variety of entities including their own governments or others having a stake in the confidentiality of the information provided by the source. In certain parts of the world, the consequences of public disclosure of the identity of an individual that has served as a U.S. source are often swift and far reaching, from economic reprisals to possible harassment, imprisonment, or even death.

9.      Section 1.4(c) of E.O. 13,526 also recognizes that the release of intelligence methods can cause damage to national security. Intelligence methods are the means by which (or the manner in which) an intelligence agency collects information to support military operations, assist in national policymaking, assess military threats, or otherwise accomplish its mission. Detailed knowledge of the methods and practices of an intelligence agency must be protected from disclosure because such knowledge would be of material assistance to those who would seek to penetrate, detect, prevent, avoid, or damage the intelligence operations of the United States.

10.      Finally, disclosure of the intelligence sources or methods the U.S. government implements could reasonably be expected to enable persons and groups hostile to the United States to identify U.S. intelligence activities, methods or sources, and to design countermeasures to them. This would damage the ability of the U.S. government to acquire information that is often critical to the formulation of strategic plans and missions designed to safeguard the United States against our enemies.

11.    Based on the information provided to me in the course of my official duties, the record referred to DIA by DoS, which is an intelligence report classified at the SECRET level, contains information concerning intelligence sources and methods.  Release of this information would reveal specific areas of intelligence interest to the Intelligence Community (IC) and specific details about the sources and methods associated with obtaining the reported intelligence.

12.    DIA has not released the intelligence contained in the referred record because to do so would reveal classified source and methods and impair the intelligence collection mission of the IC.  In particular, disclosure of the information contained in this record would provide adversaries sufficient information about specific intelligence collection techniques used by the United States that adversaries could then use to develop countermeasures to resist these intelligence gathering techniques.  This, in turn, would render useless the intelligence sources and methods upon which the IC relies.  It is for this reason that the intelligence information contained in the referred record remains currently and properly classified as Confidential or Secret under E.O. 13,526 and it is appropriately withheld under FOIA exemption (b)(1).

### 1.4(d) – Foreign Relations or Foreign Activities of the United States, Including Confidential Sources

13.    DIA also withheld certain information contained in the referred intelligence report under Exemption (b)(1) because it relates to foreign relations or foreign activities of the United States, the disclosure of which could reasonably be expected to cause damage to our relationships with other nations and our national security.   Section 1.4(d) of E.O. 13,526 recognizes that the release of certain information regarding foreign activities of the United States

could reasonably be expected to impair U.S. government relations with foreign governments. Good relations with other nations leads to intelligence sharing and ultimately protects national security. Maintaining good relations with foreign governments is imperative to the successful accomplishment of DIA's mission. Based on the information provided to me in the course of my official duties, I have determined that release of information in the referred record identified as being withheld under Section 1.4(d) of E.O. 13, 526 would divulge foreign activities of the U.S. government and damage foreign relations and, as such, it is appropriately withheld under FOIA exemption (b)(1).

Portions Withheld Under 5 U.S.C. § 552(b)(3)

14.    DIA also withheld information in the referred record under Subsection (b)(3) of the FOIA, which permits the withholding of documents that are "specifically exempted from disclosure by statute provided that such statute. . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue . . ." DIA generally applies 10 U.S.C. § 424 when asserting Exemption 3, which statute states "(a) Exemption from disclosure-- Except as required by the President or as provided in subsection (c), no provision of law shall be construed to require the disclosure of--(1) the organization or any function of an organization of the Department of Defense named in subsection (b); or (2) the number of persons employed by or assigned or detailed to any such organization or the name, official title, occupational series, grade, or salary of any such person." DIA is a covered organization under section 424(b).

15.    DIA withheld portions of the referred record under Exemption 3, pursuant to the authority of 10 U.S.C. § 424, to protect specific information that would divulge an intelligence collection function of the Agency that would risk harm to national security. In particular, DIA

withheld codes and information about the agencies, countries, and organizations with which DIA

shares intelligence information of this type. As relates specifically to which countries DIA

chooses to share or not share specific intelligence, such information would give insight into a

critical intelligence function and would cause national security harm. Section 1.7(b)(5) of E.O.

12,333 specifically states that one of DIA's duties is to "conduct foreign defense intelligence

liaison relationships and defense intelligence exchange program with foreign defense

establishments, intelligence or security services of foreign governments, and international

organizations." The release of the countries that DIA shared this specific intelligence with could

compromise intelligence sharing agreements we have with these governments and may hinder

our relationship with other nations who did not receive that same intelligence information.

Additionally, release of the codes contained in the referred intelligence report and other

information identifying agencies and organizations with whom DIA shares information would

reveal specific details of how DIA goes about the sensitive business of its intelligence collection

function, which information is protected under 10 U.S.C. § 424.

16.    DIA also withheld under 10 U.S.C. § 424 portions of the referred record

containing phone numbers, email addresses, and office symbols, all of which, individually and

combined, shed light on the Agency's organizational structure and function. DIA is strictly

prohibited from releasing such information under 10 U.S.C. § 424.

17.    A separate Exemption 3 statute, 50 U.S.C. § 3024 (i)(1), provides that "[t]he

Director of National Intelligence shall protect intelligence sources and methods from

unauthorized disclosure." The National Security Act is an exemption (b)(3) withholding statute

that refers to particular types of matters to be withheld, and "requires that the matters be withheld

from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3).

DIA carries out its intelligence mission under guidance from the Director of National

Intelligence and in accordance with the National Security Act. Therefore, DIA is legally

obligated to withhold any intelligence sources or methods from release. DIA withheld portions

of the referred record under Exemption 3 and 50 U.S.C. § 3024(i) because their release would

reveal intelligence sources and methods. Although no showing of harm is required to justify the

application of Exemption 3, as explained in paragraphs 8-12 above, release of the withheld

information regarding intelligence sources and methods would allow adversaries to employ

countermeasures, thus reducing the effectiveness of the sources and methods as intelligence

collection tools. Because 50 U.S.C. § 3024 prohibits DIA from disclosing the intelligence

sources and methods contained in the referred record, the Agency properly withheld the

information under Exemption 3.

<u>Non-Segregability</u>

18.    I have carefully reviewed Attorney General Holder's memo dated 19 March 2009,

which encourages agencies to make discretionary disclosures and directs agencies to segregate

and release nonexempt information. The documents at issue were carefully reviewed line-by-

line by a subject matter expert for reasonably segregable information. I have determined that

there are no reasonably segregable portions of this exempt material.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of May, 2018

Alesia Y. Williams
Chief, Freedom of Information Act and
Declassification Services Office