## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 17 C 2494 |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, | ) | Judge John Z. Lee |
| | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Professor Jacqueline Stevens has sued the United States Department of State ("Department"), alleging that it failed to conduct a reasonable search and withheld certain records it did find in violation of the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. § 552. The Department has moved for summary judgment. Because the Department has established that it properly invoked the statutory exemptions outlined in FOIA, the Court grants summary judgment in its favor as to that issue. Furthermore, with the exception of two of the Department's subdivisions, the Court finds that the searches conducted by the Department satisfied statutory requirements. As to the remaining two subdivisions, the Court has concerns regarding the adequacy of their search, and the Department is directed to perform a supplemental search to remedy that shortcoming.

# Background[1]

Jacqueline Stevens is a professor of political science at Northwestern University. Def.'s L.R. 56.1 Stmt. Material Facts ("Def.'s SOF") ¶ 3, ECF No. 59. One of Stevens's research projects focuses on the State Department's relationship with the foreign campuses of American universities. Pl.'s L.R. 56.1 Stmt. Material Facts ("Pl.'s SOF") ¶¶ 9–12, ECF No. 65. As part of that research, Stevens submitted three FOIA requests to the Department:[2]

- **Request 3180** demanded "[a]ll State HQ and consular Qatar materials in all system records and elsewhere referencing Northwestern University's Qatar campus" from 2005 to present, including "memorandums, cables or email, notes, reports, correspondence with other agencies, members of Congress (or staff) and private firms or individuals." Def.'s SOF ¶ 5.

- **Request 3181** demanded "policy and planning materials" relating to "establishing U.S. university campuses in Qatar, Abu Dhabi, South Korea, China, and Singapore" from 2003 to present. Def.'s SOF ¶¶ 20–21.

- **Request 3575** demanded documents "sent to and from USAID" and documents "produced, received or maintained by the Middle East Partnership Initiative and its components," from 2004 to present, relating to: (1) "U.S. Government funds transferred to the Independent Center of Journalists"; (2) Northwestern University and its components, including the Medill School of Journalism; or (3) the Center of Journalism Excellence. Def.'s SOF ¶¶ 37–38.

To fulfill Stevens's requests, the Department surveyed multiple filing systems and offices for relevant materials.[3] Among other locations, the Department

---

[1] The following facts are undisputed or have been deemed admitted.

[2] In 2017, Stevens agreed to modify Requests 3181 and 3575. *See* Def.'s SOF ¶¶ 21, 38.

[3] In her declaration, Stevens makes multiple assertions about the Department's search process that are not based on her personal knowledge. *See, e.g.* Pl.'s Ex. 1, Stevens Decl. ¶¶ 29, 30, 34, ECF No. 64-1. That violates Federal Rule of Civil Procedure 56(c)(4), which dictates that affidavits "used to support or oppose a motion must be made on

examined the State Archiving System, the Records Inventory Management System, Embassies and Consulates in Abu Dhabi, Beijing, Doha, Seoul, Singapore, and Shanghai, along with the Bureaus of Diplomatic Security ("DS"), Near Eastern Affairs ("NEA"), East Asian and Pacific Affairs ("EAPA"), and International Information Programs ("IIP"). Def.'s SOF ¶¶ 7, 22, 39. The Department's affidavit lists the keywords it used to scan each of those locations. Ex. A, Stein Decl. ¶¶ 16–59, Def.'s SOF.

As a result of its efforts, the Department found hundreds of responsive documents. In response to Request 3180, the Department produced 128 records in full, 350 records in part, and withheld 22 other records. Def.'s SOF ¶ 50. As to Request 3575, the Department produced 29 records in full, 2 records in part, and withheld 2 other records. *Id.* ¶ 52. As to Request 3181, the Department produced no records. *Id.* ¶ 51.

Concerned about the adequacy of the Department's search and its decision to withhold certain information, Stevens filed suit. After it completed its document production in this case, the Department moved for summary judgment. *See* Summ. J. Mot., ECF No. 57. In keeping with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), the Department also produced an index describing the withheld documents. *See* Def.'s SOF, *Vaughn* Index. The Department's summary judgment motion is now before the Court.

---

personal knowledge." Accordingly, the Court strikes those assertions and disregards the factual statements they support. *See, e.g.*, Pl.'s SOF, Part I ¶ 49, Part II ¶¶ 9, 10, 12, 14–17, ECF No. 65.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

## Analysis

Stevens challenges the Department's response to her FOIA requests on two grounds. First, she insists that the Department failed to conduct an adequate search for the requested materials. Second, she maintains that the Department wrongly withheld certain documents.

## I.     The Adequacy of the Department's Search

FOIA provides that agencies "shall make . . . records promptly available to any person" who submits a request that "(i) reasonably describes such records and

(ii) is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A). To establish that a search was adequate, an agency must show: (1) "that it made a good faith effort to conduct a search for the requested records" and (2) that it used "methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

At the summary judgment stage, "the question [under FOIA] . . . is not whether the agency *might* have additional, unidentified responsive documents in its possession." *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 387 (7th Cir. 2015). "Rather, the court need only determine whether the search itself was performed reasonably and in good faith." *Id.* And, under FOIA, good faith is presumed, subject to rebuttal. *See Henson v. Dep't of Health & Human Servs.*, 892 F.3d 868, 875 (7th Cir. 2018) ("Good faith is presumed.").

## A. Good Faith

Although Stevens devotes most of her firepower to challenging the reasonableness of the Department's search, she briefly argues that the Department did not act in good faith. Specifically, Stevens faults the Department for failing to "follow-up on any known leads." Def.'s Resp. at 9, ECF No. 64 (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) ("An agency . . . [must] account for leads that emerge during its inquiry.") (quotation marks omitted). The primary lead that Stevens identifies is an email from the Dean of Northwestern's Qatar campus to the then-Ambassador to Qatar. Because that email refers to a

prior meeting between the Dean and the Ambassador, Stevens Decl. ¶ 31, Stevens submits that the Department should have widened its search to look for information about that meeting, *id.* ¶ 32.

But Stevens has failed to rebut the presumption of good faith. Notably, the Department did perform supplemental searches of the Ambassador's classified and unclassified email. Def.'s Ex. A, Stein Decl. ¶¶ 20–22, ECF No. 59; *see Stevens v. U.S. Dep't of Homeland Sec.*, No. 13 C 03382, 2014 WL 5796429, at \*6 (N.D. Ill. Nov. 4, 2014) (finding that "the agency's actions to rectify the failings of the initial search . . . demonstrate [that] an adequate search was performed").

And the Department has gone to great lengths to satisfy Stevens's requests. *See Henson*, 892 F.3d at 875 (observing that the presumption of good faith "can be reinforced by evidence of the agency's attempts to satisfy the request"). Indeed, between 2015 and 2018, the Department scoured over ten distinct filing systems, entered dozens of queries, and produced hundreds of documents. Stein Decl. ¶¶ 13–36. Considering those efforts, the Court finds that the Department carried out the search in good faith.

## B. The Reasonableness of the Search

Stevens's primary objection, though, is to the adequacy of the Department's search. It is well-established that "[t]he adequacy of [an agency]'s search is judged under a reasonableness standard." *Becker v. I.R.S.,* 34 F.3d 398, 406 (7th Cir. 1994). To satisfy that standard, an agency must produce a "detailed affidavit, setting forth the search terms and the type of search performed, and averring that

all files likely to contain responsive materials (if such records exist) were searched."

*Oglesby*, 920 F.2d at 68. "[I]f a review of the record raises substantial doubt [about the adequacy of the search], particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate." *Rubman*, 800 F.3d at 387 (citation omitted). Attacking the reasonableness of the search, Stevens contends that the Department refused to scrutinize relevant locations and failed to use appropriate keywords in the queries it did perform.

### 1. The Locations Searched

According to Stevens, the Department did not look everywhere it should have. Her primary argument concerns Request 3180, which sought records "referencing Northwestern University's Qatar campus." Stein Decl. ¶ 5. The Department should have scanned the emails of all of the employees at the U.S. Embassy in Qatar, Stevens says, rather than conducting a "piecem[eal] search of select email holder." *See* Pl.'s Resp. at 8. But that significantly understates the Department's efforts. In fact, the Department investigated the "unclassified and classified email records of employees in the Public Affairs Section, Economic Section, and Political Section" of the U.S. Embassy in Qatar. Stein Decl. ¶ 21. If Stevens believes that the Department should have reviewed emails sent by employees in other sections, she does not identify them.

More broadly, Stevens posits that the Department should have investigated a half dozen other locations, such as "the Bureau of Political-Military Affairs," the emails of "prior and subsequent ambassadors", and the personal emails and text

messages of "employees of the various embassies." Pl.'s Resp. at 8–9. The problem is that Stevens fails to "articulate[ ] specific reasons why additional documents would have turned up" if the Department had scanned the locations she puts forward. *See Stevens v. U.S. Immigration & Customs Enforcement*, No. 17 C 2853, 2020 WL 108436, at *6 (N.D. Ill. Jan. 9, 2020).

By contrast, the Department has produced a detailed affidavit attesting that it "conducted a thorough search of all . . . locations that were reasonably likely to contain records responsive to Plaintiff's FOIA request." Stein. Decl. ¶ 89. Such affidavits "cannot be rebutted by purely speculative claims about the existence or discoverability of documents." *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). Even *Maydak v. U.S. Dep't of Justice*, the case upon which Stevens relies, is consistent with that principle. 362 F. Supp. 2d 316, 326 (D.D.C. 2005), *order vacated in part*, No. CV 00-0562(RBW), 2008 WL 11497858, *1 (D.D.C. Dec. 3, 2008). In *Maydak*, the court denied an agency's motion for summary judgment partly because "no one avers . . . that all files likely to contain responsive records were searched." *Id*. This case is different because the Department has provided an affidavit by a knowledgeable person stating that the Department has scrutinized all such locations. *See* Stein Decl. ¶ 89; *see also* Def.'s SOF ¶ 49.

In short, Stevens's speculation that responsive records may be found in other locations is not enough to undermine the adequacy of the Department's search.

### 2. The Search Terms Used

Continuing her focus on Request 3180, Stevens objects to the keywords the Department used to locate records about Northwestern's Qatar campus. As a threshold matter, the parties disagree about the import of a keyword search agreement that they entered in September 2017. According to a status report filed at the time, "[t]he parties . . . agreed to [refine the] searches using certain keywords, to reduce the number of documents the Department must review." 9/29/2017 Status Report, ECF No. 18. "If Stevens is ultimately unsatisfied with the resulting production," the status report continued, "the parties will revisit the issue." *Id.* Because the Department used the agreed-upon keywords to narrow the search, but did not perform additional queries, Stevens argues that its search for documents responsive to Request 3180 was inadequate.

But it is Stevens, not the Department, who did not comply with the agreement. On February 5, 2018, Stevens learned that the Department considered its search complete. Ex. 7, 2/5/2018 Email, Pl.'s Resp. Soon after, the Department announced that it was preparing a summary judgment motion and an accompanying *Vaughn* index. *See, e.g.* 2/27/2018 Minute Entry, ECF No. 25 (setting a briefing schedule). For the next sixteen months, Stevens said nothing about the keyword search agreement. In fact, Stevens's June 7, 2019 response to the Department's summary judgment motion was the first time she raised any concerns about that agreement. Pl.'s Resp. at 6–7. Seeing no reason for the delay, the Court

concludes that Stevens has waived argument regarding this issue.  *See Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 369 F. Supp. 3d 1, 13 (D.D.C. 2019) (finding that a "belated challenge to [the agency]'s search terms . . . is far too late" when the plaintiff failed to raise its concerns despite multiple opportunities to do so).

Waiver aside, Stevens's argument fails on the merits.  Pursuant to the terms of the agreement, the Department used twenty-one different keywords—including many with a wildcard term—to narrow its search results.  Although Stevens questions that approach, she does not propose any additional keywords.  Nor does she explain why using additional terms would be essential to a reasonable search.  *See DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (recognizing that an agency "need not knock down every search design advanced by every requester").  For these reasons, the Department's decision not to go beyond the keyword search agreement does not undercut the reasonableness of its efforts.

Arguing in the alternative, Stevens insists that "none of the purportedly agreed upon keywords were ever used."  Pl.'s Resp. at 7, ECF No. 64.  Relatedly, she complains that the Department never used the term "censor*"—one of those keywords—in its search.  *Id.*  Here again, Stevens misunderstands the Department's affidavit.  In fact, the affidavit confirms that the Department employed the agreed keywords, including the term "censor*", in its investigation.  *See* Stein Decl. ¶ 7 n.1; *id.* at 7 n.4 ("During the course of it [sic] processing of this

request, the Department applied [those] keywords to narrow the results of these searches.").

Stevens's final argument rests on firmer ground. Most of the Department's subdivisions used "Northwestern" as their primary search term. *See* Stein Decl. ¶¶ 17, 19, 21, 22, 26, 32, 35. But two of those subdivisions—the Bureaus of Near Eastern Affairs ("NEA") and International Information Programs ("IIP")—looked for "Northwestern University" rather than "Northwestern."[4] Stein Decl. ¶¶ 28–29. Usually, agencies may not search for the formal version of a name without also looking for informal variants. *See, e.g. Bagwell v. U.S. Dep't of Justice*, 311 F. Supp. 3d 223, 229–30 (D.D.C. 2018) (declaring that an agency's search for "Pennsylvania State University" was unreasonable "because it would not pick up documents that contained only 'PSU' or 'Penn State.'").

*Stevens v. U.S. Dep't of State*, a FOIA action that involved the same parties as this one, is instructive. No. 13 C 5152, 2015 WL 1744131 (N.D. Ill. Apr. 14, 2015). There, the Department looked for "Mark Lyttle" but not "Lyttle." *Id.* at *3. In classifying that query as unreasonable, the court found it significant that "the State Department searched for the term 'Lyttle' in other databases in other locations." *Id.* "The very fact that defendant used 'Lyttle' as a search term in other databases," the court continued, "shows that it is a term reasonably calculated to uncover relevant documents." *Id.*

---

[4]     Stevens's brief confuses the Bureau of Near Eastern Affairs, which searched for "Northwestern University," with the Bureau of Diplomatic Security, which searched for "Northwestern." *See* Stein Decl. ¶¶ 23–30.

For similar reasons, the Court cannot say that the NEA's and IIP's searches were reasonably calculated to uncover responsive records. Tellingly, every other subdivision used "Northwestern," rather than "Northwestern University," as their primary search term. And, while it is conceivable "that the way [the NEA and IIP] databases operate makes it unlikely that any document could contain [the term Northwestern] without [the term University]," the Department does not make that argument. *Id.* at *3–4. As a result, the Court has "substantial doubt" as to the adequacy of the Department's search of the NEA's and IIP's databases. *Rubman*, 800 F.3d at 387.

To sum up, the Court finds that all but two of the Department's subdivisions performed reasonable searches for the requested records. At the same time, the Department has failed to demonstrate the reasonableness of the searches conducted by NEA and IIP regarding Request 3180 for the reasons stated above. Accordingly, the Department's request for summary judgment as to the adequacy of the search is denied as to those two subdivisions, but granted in all other respects. To satisfy the Court's concerns, the NEA and IIP must perform an additional search for "Northwestern," along with any follow-up searches they deem reasonable. *See Campbell*, 164 F.3d at 28 (reminding agencies to "revise [their] assessment of what is reasonable . . . to account for leads that emerge") (quotation marks omitted). Within ninety days, the Department should provide Stevens with either: (1)

responsive documents and, if appropriate, a *Vaughn* index, or (2) a letter stating that the supplemental searches uncovered no responsive documents.[5]

## II. Exemptions

As a general matter, FOIA "contemplates a policy of broad disclosure of government documents." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998). That said, "Congress has structured various exemptions from the FOIA's disclosure requirements in order to protect certain interests in privacy and confidentiality." *Id.* "In view of the mandate for broad disclosure," the Seventh Circuit has cautioned, "those exemptions are to be construed narrowly." *Enviro Tech. Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004). For the same reason, the "[g]overnment bears the burden of justifying its decision to withhold the requested information pursuant to a FOIA exemption." *Solar*, 142 F.3d at 1037 (citing *Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995)). Here, Stevens faults the Department for withholding information under Exemptions 1, 3, 4, 5, and 6.

### A. Exemption 1 (National Security)

The first exemption dictates that agencies need not disclose information that is: "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." *See* 5 U.S.C. § 552(b)(1). When interpreting Exemption 1, courts "have consistently deferred to executive

---

[5] The Court believes that 90 days is necessary in light of the current public health emergency caused by the novel coronavirus, COVID-19. If the Department discovers that it needs additional time, it should file a motion with the Court.

affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003). Still, the government must provide enough information for the reviewing court to "draw [some] connection between the documents at issue and the general standards that govern the national security exemption." *Campbell*, 164 F.3d at 31.

At the outset, Stevens questions the Department's reliance on Executive Order 13,526, which empowers agencies to classify records that relate to "foreign government information," "intelligence activities," and "foreign relations." *See* Classified National Security Information, 75 Fed. Reg. 707, 709 (Dec. 29, 2009). In Stevens's view, that Executive Order is "circular, vague, unduly broad, and in contravention of FOIA's language and stated purpose." Pl.'s Resp. at 10. Yet Stevens offers no authority to justify that position. And courts routinely uphold agency decisions to withhold documents classified under Executive Order 13,526. *See e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 943 (D.C. Cir. 2013); *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 640 F. App'x 9, 12 (D.C. Cir. 2016). Thus, Stevens's blanket objection to any information withheld pursuant to that Order misses the mark.

Next, Stevens portrays the Department's *Vaughn* index as "boilerplate" that does not justify the invocation of Exemption 1. Pl.'s Resp. at 10. It is true that many of the Department's explanations use similar language. But that is the wrong question. *See Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009) ("[W]hen

the potential harm to national security . . . is the same, it makes sense that the agency's stated reasons for nondisclosure will be the same."). The right question is whether the Department's explanations "appear[ ] logical or plausible." *Judicial Watch*, 715 F.3d at 941; *see Morley v. C.I.A.*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) ("Exemption 1 . . . suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified."). With that standard in mind, the Court examines each record that Stevens says should have been disclosed.

### 1.    Document 27

This classified cable describes "the effects of education in Qatar." *Vaughn* Index ¶ 27. Because the cable pertains to "sensitive national security topics," the Department predicts that disclosure "could . . . cause serious damage to . . . our relationships with countries whose cooperation is important to U.S. national security." *Id*. Mindful of the "substantial weight" accorded to agency affidavits in this context, the Court finds it plausible that an informant provided the Department with sensitive information about the impact of education on Qatari citizens. *Morley*, 508 F.3d at 1124. Thus, the Department has adequately supported its decision to withhold this document.

### 2.    Document 28

This cable "report[s] on discussions between the U.S. Ambassador to Qatar and a Qatari government official." *Vaughn* Index ¶ 28. "Release of th[is] foreign government information," the Department warns, could discourage foreign leaders

from "furnish[ing] information important to the conduct of U.S. foreign relations." *Id.* Considering the high-level officials involved, the Court is persuaded that divulging the content of their conversations could plausibly harm national security. And, contrary to Stevens's suggestion, that the Department reclassified Document 28 during this litigation does not cast doubt on this justification. *See Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 80–81 (D.C. Cir. 1987) ("FOIA [does not] impose any additional requirements on agencies when they reclassify documents."). Thus, the Department has adequately supported its decision to withhold this document.

### 3. Document 34

This cable is titled "Qatar: Ousted Media Freedom Advocate Questions Qatari Commitment to Reform." *Vaughn* Index ¶ 34. The Department explains that this document features "discussions of sensitive national security topics involving U.S. interests in Qatar." *Id.* Disregarding this rationale, Stevens submits that "the document pertains to generally publicized information." Pl.'s Resp. at 11. But nothing in her briefing or factual statement supports that assertion. Besides, even if the "Media Freedom Advocate" spoke publicly, it is still plausible that the Department's analysis of a statement criticizing another government would be sensitive. Thus, the Department has adequately supported its decision to withhold portions of this document.

### 4. Documents 29, 30, 33, 34, 35, 36, and 38

These documents feature Department-created "scenescetters" designed to prepare American officials for visits to Qatar. *See, e.g., Vaughn* Index ¶ 36

("Scenesetter for DHS Secretary Michael Chertoff's May 2008 Visit to Qatar"). "This material reflects information about the nature of U.S. engagement with other countries and evaluations by U.S. officials regarding those engagements," the Department says. *Id.* Because it is plausible that briefing materials intended for relatively high-level officials would contain some sensitive information, the Department has adequately supported its decision to withhold portions of these records.

### 5. The DIA Intelligence Report

According to the Defense Intelligence Agency ("DIA"), this document "is an intelligence report classified at the secret level." *See* Ex. B, *Williams* Decl. ¶¶ 10–12, Def.'s SOF. Among other dangers, disclosure of the report "would reveal classified source[s] and method[s]." *Id.* ¶ 12. "In particular," the DIA adds, "disclosure of the information continued in this record would provide adversaries sufficient information about specific intelligence collection techniques used by the United States that adversaries could then use to develop countermeasures." *Id.* That publishing a classified report would expose intelligence gathering techniques is sufficiently logical to defeat Stevens's challenge to the DIA's decision to withhold this document. *See, e.g.*, *Nat'l Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101, 166 (D.D.C. 2013) ("Although many details . . . remain unknown, the DIA's declaration plausibly establishes that the withheld information relates to sensitive operations within the Intelligence Community. That is sufficient to grant summary judgment.").

As a last resort, Stevens urges the Court to compel *in camera* review of the documents discussed above. "In the absence of any indicia of bad faith," however, a plaintiff's "speculation about the withheld documents is insufficient to justify *in camera* review." *Canning v. United States Dep't of State*, 134 F. Supp. 3d 490, 502 (D.D.C. 2015). And again, Stevens has failed to articulate any compelling reasons to distrust the Department's representations regarding Exemption 1. The Court thus declines to require *in camera* review.

## B. Exemption 3 (Information Exempted by Another Statute)

Under this exemption, "FOIA does not apply to matters that are specifically exempted from disclosure by [other] statute[s]." *Bassiouni v. C.I.A.*, No. 02 C 4049, 2004 WL 1125919, at *4 (N.D. Ill. Mar. 31, 2004) (citing 5 U.S.C. § 522(b)(3)). As relevant here, 8 U.S.C. § 1202(f) directs the Department to treat records "pertaining to the issuance or refusal of visas" as confidential. In keeping with that statutory obligation, the Department withheld Document 61, an email titled "Hon. Dana Shell Smith – Help with U.S. Visa." *Vaughn* Index ¶ 61.

Challenging that decision, Stevens speculates that the redacted information may relate to a prospective rather than an actual applicant. But the relevant *Vaughn* entry, which clarifies that "[t]he Department withheld information regarding the identity of a visa applicant," forecloses that possibility. *Id.* Equally unavailing is Stevens's argument that the Department waived Exemption 3 by disclosing information about the applicant. The Department avers that a visa applicant sent an email to the Ambassador Smith, not that the Ambassador

disclosed any protected information in response. *See Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 742 n.30 (D.C. Cir. 1983) (recognizing that "[a]n *unauthorized* disclosure of documents does not . . . constitute a waiver of the applicable FOIA exemption") (emphasis added). Thus, the Department has justified its decision to withhold portions of Document 61.

### C.     Exemption 4 (Confidential Information)

FOIA's fourth exemption provides that agencies need not disclose "commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). Just last year, the Supreme Court elaborated on the scope of this exemption.[6] *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019). "[W]here commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy," the Court held, "the information is 'confidential' within the meaning of Exemption 4." *Id.* at 2366.

Applying that standard, the Court concludes that Madigan's course materials fall within Exemption 4. The critical fact is that the challenged documents "[are] not shared by Ms. Madigan beyond her students." *Vaughn* Index ¶¶ 11–13. Put

---

[6]     Stevens filed her response about two weeks before the Supreme Court released its decision in *Food Marketing*. *See* Pl.'s Resp. In its reply, the Department called attention to that case. *See* Def.'s Reply at 13–14. Still, Stevens failed to ask for leave to file a sur-reply to address *Food Marketing*. Thus, she has waived her opportunity to do so. Setting aside waiver, pre-*Food Marketing* case law supports the same outcome. *See Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. 1992) ("[C]ommercial information provided to the Government on a voluntary basis is 'confidential' for the purpose of Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained.").

differently, although Madigan distributes those documents to paying students, she does not make them available to the public. Because those course materials "would customarily not be released to the public by the person from whom [they were] obtained," Exemption 3 permits the Department to withhold them. *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, No. CV 18-2901 (BAH), 2019 WL 7372663, at *11–12 (D.D.C. Dec. 31, 2019) (citation omitted).

## D.    Exemption 5 (Deliberative Process Privilege)

According to Exemption 5, an agency may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Among other functions, this exemption shields "documents reflecting the deliberative or policy-making processes of governmental agencies." *Enviro Tech*, 371 F.3d at 374–75. To qualify, a record must be "predecisional in the sense that it is actually antecedent to the adoption of an agency policy" and "deliberative in the sense that it is actually related to the process by which policies are formulated." *Id*. at 375 (citations and quotation marks omitted).

Stevens challenges twenty-three documents that the Department withheld under Exemption 5. *See* Pl.'s Resp. at 15. Her primary objection is that those documents do not pertain to "official agency policy" or "agency adjudication." Pl.'s Resp. at 16. But the deliberative process privilege is not limited to official policies and adjudications. Instead, it extends to "documents . . . comprising part of a process by which governmental decisions and policies are formulated." *See Dep't of*

*Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citation omitted). In keeping with that principle, "agency deliberations about how to respond to media inquiries," "suggested talking points," and "determinations about how to respond to . . . public interest groups [and] members of Congress," fall within Exemption 5. *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 51–52 (D.D.C. 2019) (collecting cases).

Measured against that standard, the Department has established that it properly invoked Exemption 5. Contrary to Stevens's suggestion, many of the challenged records do relate to official policy decisions. Documents 20 through 26, for instance, feature "back and forth discussion . . . regarding the research and drafting of the text of the P[ublic] D[iplomacy] C[ountry] C[ontext]," a strategic planning exercise. *Vaughn* Index ¶¶ 20–26. And the other documents reflect the sort of informal policy deliberations that also implicate the deliberative process privilege. For example, six documents reflect preliminary discussions about how American officials should interact with foreign audiences and the media. *Vaughn* Index ¶¶ 29, 30, 35, 41, 53, 67.

In a parting shot, Stevens warns that "Defendant's use of Exemption 5 would shield each and every substantive letter . . . shared between government employees." Pl.'s Resp. at 16. Not so. Only information that relates to a decision, that predates that decision, and that comprises opinions (rather than factual material), falls within the privilege. *See Enviro Tech.*, 371 F.3d at 375 (noting that the privilege "typically does not justify the withholding of purely factual material").

And the fact that the Department has produced hundreds of records shows that the privilege is not all-encompassing. The upshot is that the Department has appropriately justified its invocation of Exemption 5.

### E.     Exemption 6 (Privacy)

This exemption specifies that a department may hold back "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). To decide whether disclosure is "clearly unwarranted," courts balance "the individual's right of privacy against the preservation of the basic purpose of [FOIA] to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose,* 425 U.S. 352, 372 (U.S. 1976).

Although Stevens takes issue with the Department's reliance on Exemption 6, she fails to highlight any records that she believes should have been disclosed. Instead, she cites the principle that "employees generally have no expectation of privacy regarding their names, titles, grades [and] salaries." *See Core v. U.S. Postal Serv.*, 730 F.2d 946, 948 (4th Cir. 1984). Without more, however, the Court cannot tell which records Stevens believes were improperly withheld. Thus, Stevens has waived argument as to this exemption. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("[U]ndeveloped arguments are waived.").

Ultimately, having reviewed the *Vaughn* index and accompanying DIA declaration, the Court is convinced that the Department has adequately supported its invocation of Exemptions 1, 3, 4, 5, and 6. As a result, the Court grants the

Department's motion for summary judgment as it relates to the withheld documents.

## Conclusion

For the reasons set forth herein, the Department's motion for summary judgment is granted in part and denied in part. As explained above, the Department is directed to perform supplemental searches of the NEA's and IIP's databases and to provide Stevens and the Court with a letter detailing the results of those searches by June 22, 2020. To address any remaining issues regarding these supplemental searches, the Court sets a status hearing for 7/1/20 at 9:00 a.m.


**IT IS SO ORDERED.**               **ENTERED**   **3/23/20**

_____
**John Z. Lee**
**United States District Judge**